UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────

DAVID C. LETTIERI,

                Plaintiff,

                                    3:23-CV-1597
v.                                     (AMN/ML)

JENELLE BRIGUEAL,

                Defendant.

───────────────────────────────────

APPEARANCES:                         OF COUNSEL:

DAVID C. LETTIERI
  Plaintiff, *Pro Se*
Niagara County Jail
5526 Niagara Street Ex.
Lockport, New York 149094


MIROSLAV LOVRIC, United States Magistrate Judge


## ORDER and REPORT-RECOMMENDATION

## I.      BACKGROUND

### A.     Procedural History

Plaintiff David C. Lettieri ("Plaintiff") commenced this civil rights action *pro se* on

December 18, 2023, on a form complaint alleging that his rights were violated by Defendant

Jenelle Brigueal ("Defendant").  (Dkt. No. 1.)  Plaintiff did not pay the filing fee for this action

and sought leave to proceed *in forma pauperis* ("IFP").  (Dkt. No. 2.)

On December 19, 2023, the undersigned denied Plaintiff's motion for leave to proceed

IFP because his submission was incomplete.  (Dkt. No. 4.)  The undersigned's order directed that

"should Plaintiff wish to proceed with this action, he must either (i) pay the $405.00 filing fee, or

(ii) submit a completed, signed, and certified inmate IFP application in accordance with this Decision and Order **within thirty (30) days** from the date of the filing of this Decision and Order." (Dkt. No. 4 at 3.)

On January 11, 2023, Plaintiff filed an amended motion for leave to proceed IFP. (Dkt. No. 5.) In addition, Plaintiff filed a Letter Request/Motion seeking a restraining order, and two letters to the Court. (Dkt. Nos. 6, 7, 8.)

### B.      Complaint

Construed as liberally[1] as possible, Plaintiff's Complaint appears to allege that his civil rights were violated by Defendant. (*See generally* Dkt. No 1.) The Complaint is far from clear but appears to allege that sometime in May 2023, Defendant, who is employed by the Federal Bureau of Investigations, "tampered with a witness that was on" Plaintiff's witness list. (Dkt. No. 1 at 5.) Based on these factual allegations, Plaintiff appears to assert the following two claims: (1) a claim that Plaintiff's "Sixth Amendment confrontation" right was violated; and (2) a claim that Plaintiff's Fifth Amendment due process right was violated. (*Id*. at 4.) As relief, Plaintiff seeks $1,000,000 in damages. (*Id*. at 5.)

Plaintiff seeks leave to proceed IFP. (Dkt. No. 5.)

## II.    PLAINTIFF'S AMENDED APPLICATION TO PROCEED IFP

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to grant IFP status if it determines that the plaintiff is unable to pay the required fee.

---

[1]      The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

28 U.S.C. § 1915(a)(1).[2]  Pursuant to 28 U.S.C. § 1915, where a plaintiff seeks leave to proceed

IFP, the court must determine whether the plaintiff has demonstrated sufficient economic need to

proceed without prepaying the required filing fee.  28 U.S.C. § 1915(a)(1).

The decision of whether to grant an application to proceed IFP rests within the sound

discretion of the court.  *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983).  The Court must

be satisfied "that the person is unable to pay such fees or give security therefor" prior to granting

IFP status.  28 U.S.C. § 1915(a)(1).  To make this threshold showing, a plaintiff must

demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that

such payment would render plaintiff destitute."  *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62

(Fed. Cl. 2007) (citing *Adkins v. E.l. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)); *see*

*also Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) ("Section 1915[a] does not

require a litigant to demonstrate absolute destitution[.]"); *accord, Lee v. McDonald's Corp.*, 231

F.3d 456, 459 (8th Cir. 2000).  As the Second Circuit has noted, "no party must be made to

choose between abandoning a potential meritorious claim or foregoing the necessities of life."

*Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339).

Here, Plaintiff's submission is incomplete.  For example, in response to question number

4, Plaintiff states that he has cash, checking, or savings accounts but does not know the total

amount.  (Dkt. No. 5 at ¶ 4.)  Moreover, Plaintiff states that he owns real estate, stocks, bonds,

securities, other financial instruments, automobiles, or other assets.  (*Id*. at ¶ 5.)  The application

---

[2]      The language of that section is ambiguous because it suggests an intent to limit
availability of IFP status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the
commencement of an action without prepayment of fees "by a person who submits an affidavit
that includes a statement of all assets such prisoner possesses").  The courts have construed that
section, however, as making IFP status available to any litigant who can meet the governing
financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman
v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

directs Plaintiff to describe the property and state its value.  (*Id*.)  Plaintiff states "Land and house have not [sic] clue on the value."  (*Id*.)

In this instance, due to Plaintiff's incomplete IFP application, I am unable to conclude that he possesses insufficient funds to pay the $405.00 filing fee to commence an action without "foregoing the necessities of life."  *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. 339). Accordingly, I deny Plaintiff's amended motion to proceed in this case IFP.[3]  (Dkt. No. 5.)  To the extent that Plaintiff may wish to renew his request to proceed IFP, and given the Court's unanswered questions about his financial situation, any request to proceed without the prepayment of fees must include a <u>fully</u> completed prisoner *in forma pauperis* application.[4]

## III.   RELEVANT LEGAL STANDARDS GOVERNING INITIAL REVIEW OF A COMPLAINT

Ordinarily, the finding that Plaintiff does not qualify for IFP status would end the Court's discussion, and Plaintiff, in light of his *pro se* status, would likely be afforded an opportunity to

---

[3]     To the extent that Plaintiff has been granted IFP in other actions that does not automatically qualify him for IFP status in this action. (Dkt. No. 7.)  Moreover, Plaintiff is required to provide complete information regarding his finances because he is seeking IFP status. To the extent that Plaintiff would prefer to not provide the financial information, he is permitted to pay the $405 filing fee and forgo the IFP application.  In addition, Plaintiff's choice to seek IFP status does not grant him access to the same financial information from Defendant.  (Dkt. No. 8.)

[4]     The Court also notes that Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(g).  The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service.  *See* http://pacer.uspci.uscourts.gov.  It appears from that review that Plaintiff accumulated three strikes for purposes of 28 U.S.C. § 1915(g) before the date this action was commenced.  *Lettieri v. Broome Cnty. Humane Society*, 20-CV-7777, 23-CV-7830, 2023 WL 8003478, at *1 (E.D.N.Y. Nov. 17, 2023) (noting that Plaintiff accumulated his third strike on September 21, 2023).  Moreover, the Complaint does not plausibly suggest that Plaintiff was in imminent danger of serious physical injury when he signed the Complaint.  28 U.S.C. § 1915(g).

either prepay the full filing fee, or submit a new, completed, and certified application for IFP. Because, however, as is discussed more completely below, I find that Plaintiff's Complaint fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915 requires that the court dismiss the action "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid[.]"  28 U.S.C. § 1915(e).

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure.  More specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and

common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV.   ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

"It is well-settled that a [42 U.S.C.] § 1983 claim does not lie against the federal government, its agencies, or employees." *Feldman v. Lyons*, 852 F. Supp. 2d 274, 278 (N.D.N.Y. 2012) (collecting cases). In 1971, in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 397 (1971), "the Supreme Court recognized an implied private cause of action for damages against federal officers who violate a citizen's constitutional rights." *Feldman*, 852 F. Supp. 2d at 278. "*Bivens* actions, although not precisely parallel, are the federal analog to § 1983 actions against state actors." *Id*. (citing *Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987)).

In *Bivens*, the Court determined that, "even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) (citing *Bivens*, 403 U.S. at 397). The Court further noted, however, that since its decision in *Bivens* in 1971, it had only recognized an implied cause of action under *Bivens* in two cases involving other constitutional violations. *Id.* at 1854-55 (citing *Davis v. Passman*, 99 S. Ct. 2264 (1979) (holding that the Fifth Amendment Due Process Clause provided an administrative assistant who sued a Congressman for firing her because she was a woman, a damages remedy for gender discrimination); *Carlson v. Green*, 446 U.S. 14 (1980) (holding that the Eighth Amendment Cruel and Unusual Punishments Clause provided a prisoner's estate a damages remedy for failure to provide the deceased with adequate medical treatment)).

The Supreme Court recently reiterated that "a cause of action under *Bivens* is 'a disfavored judicial activity.'" *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (quoting *Ziglar*, 582 U.S. at 135 (2017)). Generally, when analyzing whether a cause of action existed under *Bivens*, courts have used "a two-step process." *McGowan v. United States*, 825 F.3d 118, 123 (2d Cir. 2016) (per curiam). "First, the court must determine whether the underlying claims extend *Bivens* into a 'new context.'" *McGowan*, 825 F.3d at 123 (quoting *Turkmen v. Hasty*, 789 F.3d 218, 234 (2d Cir. 2015), *reversed in part on other grounds by Ziglar*, 582 U.S. at 138-56). "If the case is different in a meaningful way from previous *Bivens* cases decided by th[e] Supreme] Court, then the context is new." *Ziglar*, 582 U.S. at 139.

Here, assuming *arguendo* that Plaintiff had an implied cause of action under *Bivens* for his witness tampering claim, he fails to state a claim upon which relief may be granted. Plaintiff alleges solely that Defendant "tampered" with a witness on his witness list. (Dkt. No. 1 at 5.)

This conclusory allegation fails to assert any action taken by Defendant that constituted the alleged tampering.  *See Terpening v. McGinty*, 21-CV-1215, 2022 WL 17418268, at *13 n.16 (N.D.N.Y. Oct. 5, 2022) (Hummel, M.J.) (finding that the plaintiff's allegation that she has been unable to obtain transcripts from the relevant custody proceedings and inclusion of a "one page letter from a court clerk at the Town of Rochester Justice Center" indicating that there were no records for a specific case number, failed to "plead any facts that suggest that defendant has taken any actions to tamper with evidence, or hide or alter any records" and thus, failed to allege facts plausibly suggesting a . . . claim for relief), *report-recommendation adopted by* 2022 WL 17415121 (N.D.N.Y. Dec. 5, 2022) (Suddaby, J.); *London v. Cnty. of Ulster*, 14-CV-1095, 2015 WL 1579147, at *9 (N.D.N.Y. Apr. 9, 2015) (Treece, M.J.) ("While [the p]laintiff has scripted pages upon pages of accusations against these two [d]efendants, including claims of bias, coercion, and witness/evidence tampering, these accusations are a cavalcade of conclusions and not facts upon which this Court may find that a plausible claim has been pled here.  Thus, we recommend dismissing these [d]efendants from this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).").

As a result, I recommend that Plaintiff's Complaint be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).[5]

---

[5]      To the extent that Plaintiff's claim is construed as a conspiracy claim pursuant to 42 U.S.C. § 1985 or *Bivens*, I recommend that it be dismissed for failure to state a claim upon which relief may be granted.  To state a claim of conspiracy under *Bivens*, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Powell v. United States*, 19-CV-11351, 2020 WL 5126392, at *9 (S.D.N.Y. Aug. 31, 2020) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).  To state a claim of conspiracy under Section 1985(3), a plaintiff must allege facts suggesting the existence of: (1) a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws, or the equal privileges or immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se*

litigant without granting leave to amend at least once "when a liberal reading of the complaint

gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05

(2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when

justice so requires.").  An opportunity to amend is not required, however, where "the problem

with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding*

*L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact

sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated

differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is

not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d

129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1

(N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[6]

---

deprivation of his right or privilege as a citizen of the United States. *Thomas v. Roach*, 165 F.3d
137, 146 (2d Cir. 1999).  "[T]he [Section 1985(3)] conspiracy must also be motivated by some
racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators'
action." *Thomas*, 165 F.3d at 146 (internal quotation marks and citation omitted).  Vague and
unsupported assertions of a claim of conspiracy, either under Section 1985 or *Bivens* will not
suffice to state a claim upon which relief can be granted. *See, e.g.*, *Stoner v. Young Concert
Artists, Inc.*, 626 F. App'x 293, 296 (2d Cir. 2015) (summary order); *Wang v. Miller*, 356 F.
App'x 516, 517 (2d Cir. 2009) (summary order); *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir.
2003); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Polur v. Raffe*, 912 F.2d 52, 56
(2d Cir. 1990).  Plaintiff's sole conclusory allegation that Defendant engaged in witness
tampering fails to plausibly suggest any conspiracy with other actors.

[6]       *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015)
(Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171
F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can
rule out any possibility, however unlikely it might be, that an amended complaint would be

Although this Court has serious doubts, it is not clear whether a better pleading would permit Plaintiff to assert a cognizable cause of action against Defendant.  Out of an abundance of caution and in deference to Plaintiff's *pro se* status, the undersigned recommends the Complaint be dismissed with leave to amend to cure the defects as stated above.

If Plaintiff chooses to avail himself of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted.  Fed. R. Civ. P. 8(a).  In addition, the amended complaint must include allegations reflecting how the individual(s) named as Defendant(s) are involved in the allegedly unlawful activity.  Moreover, any amended pleading should address the issues identified in note 4.  Finally, Plaintiff is informed that any amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

## VI.   PLAINTIFF'S MOTION FOR A RESTRAINING ORDER

In the present matter, the undersigned has recommended dismissal of the action.  As such, I recommend that Plaintiff's motion for a restraining order against Defendant be denied. (Dkt. No. 6.)

**ACCORDINGLY**, it is

---

successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**ORDERED** that Plaintiff's amended IFP application (Dkt. No. 5) is **DENIED without prejudice and with leave to renew**; and it is further

**ORDERED** that should Plaintiff wish to proceed with this action, he must either (i) pay the $405.00 filing fee, or (ii) submit a completed, signed, and certified inmate IFP application in accordance with this Order and Report-Recommendation **within thirty (30) days** from the date of the filing of this Order and Report-Recommendation.  Plaintiff is advised that, if he does not fully comply with this Order and Report-Recommendation within thirty days, the undersigned will issue a report and recommendation to the assigned district judge that the action be dismissed; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1) pursuant to 28 U.S.C. 1915(e)(2)(B) for failure to state a claim upon which relief may be granted; and it is further respectfully

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for a restraining order (Dkt. No. 6); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[7]  The Clerk shall also send Plaintiff a blank inmate IFP application.

Dated: January 17, 2023
        Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[7]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Case 3:23-cv-01597-AMN-ML    Document 9    Filed 01/17/24    Page 12 of 58

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Tammy TERPENING, Plaintiff,

v.

Anthony MCGINTY, in his judicial
and individual capacities, Defendant.

No. 1:21-CV-1215 (GTS/CFH)
|
Signed October 5, 2022

**Attorneys and Law Firms**

Tammy Terpening, 17 Blair Road, Apt. 6, Kerhonkson, New
York 12446, Plaintiff pro se

**REPORT-RECOMMENDATION AND ORDER**

Christian F. Hummel, United States Magistrate Judge

### I. Procedural Background

**\*1** Plaintiff pro se Tammy Terpening ("plaintiff")
commenced this action on November 9, 2021, with the
filing a complaint and an application to proceed in forma
pauperis ("IFP"). See Dkt. No. 1 ("Compl."); Dkt. No. 2.
In a Report-Recommendation and Order dated April 28,
2022, the undersigned: (1) granted plaintiff's IFP application;
(2) recommended that plaintiff's 42 U.S.C. § 1983 and
Title VII claims, and Americans with Disabilities Act
("ADA") claim against defendant Judge Anthony McGinty
("defendant") in his individual capacity be dismissed with
prejudice and without leave to amend; and (3) recommended
that plaintiff's ADA claim against defendant in his official
capacity be dismissed without prejudice and with leave
to amend. See Dkt. No. 6. Plaintiff was informed that
she had fourteen days to file objections to the Report-
Recommendation and Order. See id. at 19. Plaintiff did not file
any objections and on June 13, 2022, Judge Suddaby adopted
the Report-Recommendation and Order in its entirety. See
Dkt. No. 8. Presently before the Court is plaintiff's amended
complaint for review pursuant to 28 U.S.C. § 1915. See
Dkt. No. 9 ("Am. Compl.").

### II. Initial Review of Amended Complaint

#### A. Legal Standard

Section 1915 [1] of Title 28 of the United States Code
directs that, when a plaintiff seeks to proceed IFP, "the court
shall dismiss the case at any time if the court determines
that ... the action or appeal (i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted;
or (iii) seeks monetary relief against a defendant who is
immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It
is a court's responsibility to determine that a plaintiff may
properly maintain his or her complaint before permitting him
or her to proceed with the action.

Where, as here, the "plaintiff proceeds pro se, the court
must construe his [or her] submissions liberally and interpret
them to raise the strongest arguments that they suggest."
Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir.
2014) (per curiam) (citation and internal quotation marks
omitted). This does not mean that the Court is required to
accept unsupported allegations that are devoid of sufficient
facts or claims. Pro se litigants are "not exempt ... from
compliance with relevant rules of procedural and substantive
law[.]" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)
(citation omitted). Although detailed allegations are not
required at the pleading stage, the complaint must still include
enough facts to provide the defendants with notice of the
claims against them and the grounds on which these claims
are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009);
Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).
Ultimately, the plaintiff must plead "enough facts to state a
claim to relief that is plausible on its face." Twombly,
550 U.S. at 570. "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Iqbal, 556 U.S. at 678 (citation
omitted).

**\*2** Pleading guidelines are set forth in the Federal Rules
of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8
provides that a pleading which sets forth a claim for relief
shall contain, among other things, "a short and plain statement
of the claim showing that the pleader is entitled to relief."

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

Case 3:23-cv-01597-AMN-ML    Document 9    Filed 01/17/24    Page 13 of 58

FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (citations and internal quotation marks omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought...." FED. R. CIV. P. 8(a)(1), (3). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d)(1).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (citations and internal quotation marks omitted). A complaint that fails to comply with the pleading requirements "presents far too [ ] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). The Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (internal citation omitted). However, "[d]ismissal [ ] is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted). If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the

complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

**B. Plaintiff's Amended Complaint** [2]

Plaintiff's amended complaint raises essentially the same claims as her original complaint. See generally Compl.; Am. Compl. Plaintiff asserts that defendant was the Ulster County Family Court Judge presiding over child custody proceedings between her and her children's father. See id. at 4, 8, 16-17. Plaintiff claims that the children's father was abusive towards plaintiff and the children. See id. at 3. Plaintiff states that "since at least 2019, [she] filed a [custody] petition however [she] became ill and temporarily required the care of a hospital." Id. at 13. Plaintiff submits a photocopy of discharge instructions from Vassar Brothers Medical Center Emergency Department, dated September 29, 2019, which indicated a Hematochezia [3] diagnosis for one of her daughters. See id. at 14, 16. [4] Plaintiff also submits a discharge summary dated December 12, 2019, which stated that plaintiff was "admitted to medicine service. MRI done was positive for stroke. Patient started on stroke care measure medications. Found to be B12 deficient and started on supplementation." Id. at 15. The hospital summary notes that plaintiff had "iron deficiency secondary to dysfunctional uterine bleeding. Started on iron supplementation. Pelvic ultrasound was negative for ovarian or uterine lesions. Patient with new onset diabetes, added on diabetic heart healthy diet." Id. An "[e]chocardiogram was found to have global hypokinesis with ejection fraction of 40-45%. She was recommended to proceed with transesophageal echocardiogram." Id. The summary states, however, that "because Family Court judge did not consider her hospitalized status as justification to delay deciding custody for her minor children, with potential to release to their biological father, who has been accused of sexually molesting them, discharge was attested in order for patient to appear in family court." Id. Plaintiff was "strongly encouraged to return for inpatient hospitalization management if symptoms were to recur." Id.

**\*3** Plaintiff attests that she requested "to adjourn the court date for necessary provisions for health and safety[,]" but "[d]efendant steadfastly refused and denied with blatant disrespect for the well being of [p]laintiff." Am. Compl. at 16-17. Plaintiff states that she arrived late to the court proceeding and her sister, who was already in attendance, informed plaintiff that defendant "harassed, intimidated,

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 14 of 58

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

and threatened [plaintiff's sister] with incarceration if she interfered with watching [plaintiff's] children." Id. at 17. Plaintiff asserts that "[i]t was at this Court's first appearance where the [d]efendant on his own accord without explanation changed custody[ ]" in favor of the children's father. Id. Plaintiff states that she was "[s]ick, crushed, and in depair[.]" Id. She attests that "[l]ater that day," she received an email from her children's school which explained that the children's father said that "he is not able to have the girls with him at the moment and wishes for them to remain with their mother until he has prepared for them." Id. at 17-18.

On the first page of her amended complaint, plaintiff states that she is

> seeking zero monetary damages, punitive damages, injunctive relief with penalties under [ ] 42 U.S.C. § 1988, declaratory judgment, pursuant to 18 U.S.C. §§ 241 and 242, 42 U.S.C. § 1985, 42 U.S.C. § 12203, 42 U.S.C. § 12182, 42 U.S.C. § 12301(3)(5)(7)(A)(B), Title II claim of American Disabilities Act, seeking, appointed counsel and in the alternative, tortious interference with parental rights under the common law and for such other relief The Court deems just and appropriate.

Am. Compl. at 1. In her "claims for relief[,]" plaintiff states that she "seeks all prescribed relief stated throughout this action" and specifically prays for the appointment of counsel, a jury trial, and "[a] judgment against [d]efendant for costs and such other relief as the Court may deem appropriate." Id. at 24. [5]

### C. Analysis

### 1. Miscellaneous Statutes

Plaintiff cites a string of statutes under which she purports to assert causes of action. See Am. Compl. at 1. First among

them is 42 U.S.C. § 1988. See id. "[Section] 1988 does not provide an independent cause of action, but instead provides a mechanism by which particular remedies may be sought in civil rights actions." Solomon v. City of Rochester, 449 F. Supp. 3d 104, 113 (W.D.N.Y. 2020) (citation and quotation marks omitted). Plaintiff also cites 18 U.S.C. §§ 241 and 242. See Am. Compl. at 1. These statutes concern criminal conspiracy and criminal deprivation of rights under the color of law, but "they do not provide a private right of action to civil litigants." Burke v. APT Found., 509 F. Supp. 2d 169, 173 (D. Conn. 2007) (citations omitted); see 18 U.S.C. §§ 241, 242. Next, plaintiff cites 42 U.S.C. § 12301(3), (5), (7)(A)(B). See Am. Compl. at 1. This statute explains a Congressional policy enacted as part of its Helping America's Youth initiative and the provisions that plaintiff references discuss the importance of children's health and safety. See 42 U.S.C. § 12301(3), (5), (7)(A)(B). However, the policy states that it "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity, by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." Improving the Coordination and Effectiveness of Youth Programs, Exec. Order No. 13459, § 6(c), 73 FR 8003 at *8005. Accordingly, it is recommended that any purported claims under 42 U.S.C. § 1988, 18 U.S.C. §§ 241 and 242, and 42 U.S.C. § 12301, are dismissed with prejudice and without leave to amend as plaintiff cannot state a cognizable claim. [6]

### 2. 42 U.S.C. § 1985

**\*4** "Section 1985 prohibits conspiracies to deprive individuals of civil rights." Johnson v. City of New York, 669 F. Supp. 2d 444, 451 (S.D.N.Y. 2009); see Am. Compl. at 1. As an initial matter, defendant is immune from suit under 42 U.S.C. § 1985 to the extent she seeks damages. See Walker v. Rivera, No. 1:22-CV-560 (DNH/TWD), 2022 WL 2341544, at *4 (N.D.N.Y. June 29, 2022) (explaining that judicial immunity "immunizes [ ] judges from [ ] causes of action [ ] assert[ed] under both 42 U.S.C. § 1983 and

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 15 of 58

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

§ 1985.”), <u>report and recommendation adopted</u>, 2022 WL 2805477 (N.D.N.Y. July 18, 2022).

“It is well-established that judges have absolute immunity from suit for acts performed in their judicial capacities.” Cruz v. N.Y., No. 5:17-CV-00510 (BKS/TWD), 2017 WL 6021838, at *18 (N.D. N.Y. Oct. 27, 2017) (citing Bradley v. Fisher, 80 U.S. 335 (1871); Mireles v. Waco, 502 U.S. 9, 11(1991)), report and recommendation adopted, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017). “Immunity from suit is overcome in only two narrow circumstances. [ ] [A] judge is not immune from liability for ... actions not taken in a judge's judicial capacity ... [and] for actions, though judicial in nature, taken in the complete absence of all jurisdiction.” Id. (citations and quotation marks omitted). “The Supreme Court has ‘generally concluded that acts arising out of, or related to, individual cases before the judge are judicial in nature.’ ” Id. (quoting Bliven v. Hunt, 579 F.3d 204, 210 (2d Cir. 2009)). “Judges enjoy absolute immunity even when a plaintiff offers allegations of ‘bad faith or malice.’ ” Id. (quoting Mireles, 502 U.S. at 11). “Whether an act by a judge is a ‘judicial one’ relates to the ‘nature of the act itself’—whether it is a function that is necessarily performed by a judge.” Amato v. McGinty, No. 1:17-CV-593 (MAD/ATB), 2017 WL 9487185, at *3 (N.D.N.Y. June 6, 2017) (quoting Mireles, 02 U.S. at 12), report and recommendation adopted, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017). “The parties must have dealt with the judge in his or her ‘judicial capacity.’ ” Id. (citation omitted).

Plaintiff contends that defendant was acting outside of his judicial capacity, and instead as “a witness” when he changed a custody order. Am. Compl. at 17. Although plaintiff asserts that defendant altered the custody agreement “on his own accord” and “without explanation[,]” custody orders are a judicial function of a family court judge. Id.; see Amato, 2017 WL 9487185, at *3 (“[A]ll of Judge McGinty's alleged ‘biased’ or ‘illegal’ conduct was taken in connection with his position as a Family Court judge presiding over plaintiff Amato's custody case. Whether the judge's conduct involved issuing orders based on ‘funding,’ allegedly biased decisions in favor of defendant [ ], or making decisions that were not in the best interest of [the child], these were all actions taken in the course of a custody proceeding in his capacity as a Family Court Judge. Thus, Judge McGinty is entitled to judicial immunity.”); Walker v. Fam. Ct. Judge Catherine Cholakis, No. 1:19-CV-1288 (LEK/CFH), 2020 WL 3503158, at *7

(N.D.N.Y. June 29, 2020) (citation quotation marks omitted) (determining that the defendant was entitled to judicial immunity despite allegations of the defendant “lack[ing] judicial competence and exhibit[ing] personal animus and bias” towards the plaintiff).

**\*5** As defendant was acting in his judicial capacity as a family court judge when he changed the custody order, he is entitled to judicial immunity as to plaintiff's purported § 1985 claim against him in his individual capacity to the extent plaintiff seeks punitive damages. [7] See Cruz, 2017 WL 6021838, at *18 (“Because the allegations in [the p]laintiff's complaint indicate that his claims against [various defendants] were all related to the support, visitation, and/or custody proceedings between [the p]laintiff and [his wife], the Court finds that they are all entitled to judicial immunity and recommends dismissal of [the p]laintiff's complaint against them with prejudice on judicial immunity grounds.”); Bliven v. Hunt, 418 F. Supp. 2d 135, 137 (E.D.N.Y. 2005) (“Judges are absolutely immune from liability for judicial acts, however erroneous the act and however evil the motive.”); Kampfer v. Scullin, 989 F. Supp. 194, 202 (N.D.N.Y. 1997) (“[T]he doctrine of absolute judicial immunity bars suits for monetary damages, including compensatory and punitive damage suits.”). Additionally, defendant is immune from suit under the Eleventh Amendment to the extent plaintiff seeks to sue him in his “judicial” or official capacity for damages. See Washington v. Ciccone, No. 3:21-CV-0564 (MAD/ML), 2021 WL 2935950, at *4 (N.D.N.Y. July 13, 2021) (“While judicial immunity shields judges from suit to the extent they are sued in their individual capacities, the Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.”), report and recommendation adopted, 2021 WL 4859663 (N.D.N.Y. Oct. 19, 2021); Hines v. City of Albany, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008)(“Claims against a government employee in his official capacity are treated as a claim against the municipality[.]”).

“Although the doctrine of judicial immunity provides that a judge is not liable for damages for acts performed in the exercise of her judicial function, judicial immunity does not bar actions seeking prospective injunctive relief against judicial officers. Nor does judicial immunity bar actions seeking declaratory relief.” Estes-El v. Town of Indian Lake, 954 F. Supp. 527, 534 (N.D.N.Y. 1997) (citations omitted). Further, “the Eleventh Amendment does not bar a suit against a state official when that suit seeks ... prospective injunctive relief.” Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. State, 336 F. Supp. 3d 50, 65 (E.D.N.Y. 2018) (citations

**Case 3:23-cv-01597-AMN-ML    Document 9    Filed 01/17/24    Page 16 of 58**

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

and quotation marks omitted). However, "[w]hen 'only past acts are involved,' declaratory relief is unavailable." Guan v. Mayorkas, 530 F. Supp. 3d 237, 255 (E.D.N.Y. 2021) (citations omitted). Plaintiff's allegations concern only past acts; therefore, she is not entitled to declaratory relief. See, e.g., Amato v. McGinty, No. 1:21-CV-00860 (GLS/TWD), 2022 WL 226798, at *8 (N.D.N.Y. Jan. 26, 2022). Moreover, whether plaintiff seeks the Court's involvement in past custody orders or ongoing custody proceedings, both requests are likely barred by the Younger and Rooker-Feldman doctrines. See Younger v. Harris, 401 U.S. 37 (1971); Rooker v. Fidelity Trust Co., 263 U.S. 413; District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

"[T]he Supreme Court has established that plaintiffs can properly bring a federal action 'seeking injunctive relief against a state official for an ongoing violation of law or the Constitution.' " Torres v. New York State Dep't of Corr. & Cmty. Supervision, No. 9:20-CV-301 (GLS/TWD), 2020 WL 7316120, at *3 (N.D.N.Y. Dec. 11, 2020) (citations omitted); see Ex Parte Young, 209 U.S. 123 (1908). "Under this doctrine, an action may proceed against a state official when a plaintiff: '(a) alleges an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective.' " Id. (quoting In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007)). However, under the Younger abstention doctrine, "federal courts are forbidden from enjoining ongoing state proceedings." McKnight v. Middleton, 699 F. Supp. 2d 507, 520 (E.D.N.Y. 2010), aff'd, 434 F. App'x 32 (2d Cir. 2011) (summary order) (citation omitted). "The Younger abstention doctrine is limited to three exceptional circumstances, including: (1) state criminal prosecutions; (2) civil enforcement, or 'quasi-criminal,' proceedings; and (3) 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.' " Walker, 2022 WL 2341544, at *6 (quoting Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013)). "Younger abstention is mandatory when three conditions are met: '(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims.' " McKnight, 699 F. Supp. 2d at 520.

*6 It is unclear whether there are pending family court proceedings in which plaintiff seeks the Court's intervention. See generally Am. Compl. [8] However, "the heart of this case is a child custody dispute, a matter rightfully reserved for state courts." McKnight, 699 F. Supp. 2d at 520; see Walker, 2022 WL 2341544, at *6 (collecting cases applying Younger abstention in the context of child custody disputes). Additionally, "[p]laintiff would [likely] have 'an adequate opportunity for judicial review of the federal [ ] claims' in state court." McKnight, 699 F. Supp. 2d at 520-21 (quoting McGowan, 282 F.3d at 198). "For example, after the Family Court makes its final disposition on custody and visitation, [the p]laintiff may appeal that decision to the Appellate Division and raise the unconstitutionality of the N.Y. Dom. Rel. Law and the orders of the Family Court ... in that court." Id. Thus, it is likely that plaintiff's request for injunctive or declaratory relief are barred insofar as there are pending custody proceedings.

Next, any claim asking the Court to provide a declaratory judgment on a prior custody order is barred by the Rooker-Feldman doctrine. "The Rooker-Feldman doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." Dorce v. City of N.Y., 2 F.4th 82, 101 (2d Cir. 2021). For the Rooker-Feldman doctrine to apply: "(1) the federal-court plaintiff must have lost in state court[;] (2) the plaintiff must complain of injuries caused by a state-court judgment[;] (3) the plaintiff must invite district court review and rejection of that judgment[;] and (4) the state-court judgment must have been rendered before the district court proceedings commenced." Id. (citation and quotation marks omitted).

It appears that plaintiff is challenging Judge McGinty's December 2019 custody order granting the children's father custody. See Am. Compl. at 17. Intervention into that custody order is barred by the Rooker-Feldman doctrine. See Phifer v. City of N.Y., 289 F.3d 49, 57 (2d Cir. 2002) ("There is no question that Rooker-Feldman bars [the plaintiff's] challenges to the family court's decisions regarding custody, neglect, and visitation."); Amato, 2022 WL 226798, at *11 (citation omitted) ("[I]t appears [the p]laintiff 'lost' in state court, complains of injuries caused by the state court judgments, and asks this Court to invalidate the state court's judgments regarding child custody. Thus, as currently drafted,

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 17 of 58

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

the amended complaint is likely barred under the *Rooker-Feldman* doctrine.").

**\*7** Plaintiff also fails to state a claim for relief under 🚩 §
1985. To plead a conspiracy claim, "a plaintiff must allege:
(1) a conspiracy"; "(2) for the purpose of depriving a person
or class of persons of the equal protection of the laws, or
the equal privileges or immunities under the laws;" "(3)
an overt act in furtherance of the conspiracy;" "and (4) an
injury to the plaintiff's person or property, or a deprivation
of a right or privilege of a citizen of the United States."
🚩 Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). In her
amended complaint, plaintiff states that "this case involves
a multifaceted campaign to silence, harass, and discredit
[p]laintiff for exercising her freedoms and rights afforded and
protected by United States Law." Am. Compl. at 2. Plaintiff
has only named one defendant and she does not otherwise
allege any facts that would support a conspiracy claim. See
generally Am. Compl.; see also 🚩 Thomas, 165 F.3d at
146 (citations omitted) (explaining that "[a] conspiracy 'need
not be shown by proof of an explicit agreement but can be
established by showing the parties have a tacit understanding
to carry out the prohibited conduct.' "); see also Walker, 2022
WL 2341544, at \*5 (citation and quotation marks omitted)
("[T]he conspiracy must also be motivated by some racial
or perhaps otherwise class-based, invidious discriminatory
animus behind the conspirators' action."). Accordingly, it
is recommended that plaintiff's purported 🚩 § 1985 claim
seeking injunctive and declaratory relief against defendant
in his individual and official capacities be dismissed without
prejudice, but be dismissed with prejudice and without leave to
amend to the extent she seeks punitive damages.

### 3. ADA Claims

Plaintiff's amended complaint raises three ADA claims:
Title II discrimination and retaliation claims and a Title
III discrimination claim. See generally Am. Compl. (citing,
inter alia, 42 U.S.C. §§ 12182 and 12203, and "Title
II claim of American Disabilities Act"). First, "Title III of
the ADA proscribes discrimination against the disabled in
public accommodations[,]" stating that "[n]o individual shall
be discriminated against on the basis of disability in the
full and equal enjoyment of the goods, services, facilities,
privileges, advantages, or accommodations of any place of
public accommodation by any person who owns ... or operates

a place of public accommodation." 🚩 Powell v. Nat'l Bd. of
Med. Examiners, 364 F.3d 79, 85 (2d Cir.), opinion corrected,
511 F.3d 238 (2d Cir. 2004) (quoting 42 U.S.C. § 12182(a));
see Benyi v. N.Y., No. 3:20-CV-1463 (DNH/ML), 2021
WL 1406649, at \*14 (N.D.N.Y. Mar. 23, 2021) ("Title III
'expressly does not apply to public entities, including local
governments.' "), report and recommendation adopted, 2021
WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citations omitted).
As plaintiff brings this action against Judge McGinty, whose
position is not a "public accommodation[,]" she cannot state a
claim under Title III of the ADA, and it is recommended that
any purported claim be dismissed with prejudice and without
leave to amend. 42 U.S.C. § 12181(7).

Second, as to her Title II claims, the undersigned previously
explained in its April 28, 2022, Report-Recommendation
and Order, that defendant cannot be sued in his individual
capacity under the ADA. See Dkt. No. 6 at 10-11. Judge
Suddaby subsequently adopted the Report-Recommendation
and Order and dismissed with prejudice the ADA claims
against defendant in his individual capacity. See Dkt. No.
8 at 3. As such, the only purported ADA claims that the
undersigned now addresses are those seeking to sue defendant
in his "judicial" or official capacity. See Rosenfeld v. N.Y.
State Div. of Veterans' Affs., No. 1:18-CV-1299 (GTS/
CFH), 2019 WL 4621962, at \*10 (N.D.N.Y. Sept. 24, 2019)
(collecting cases) ("It is well recognized in this Circuit that
individuals cannot be sued in their personal capacity under
either the ADA or the Rehabilitation Act.").

Generally, "suits for money damages against state officials
in their official capacities are barred by the Eleventh
Amendment." Torres, 2020 WL 7316120, at \*3. It does not
appear that plaintiff seeks money damages in her amended
complaint as she states that she is seeking "zero money
damages, punitive damages...." Am. Compl. at 1. It is not
clear whether plaintiff intended the "zero" to extend to
punitive damages; regardless, punitive damages are not an
available remedy for an ADA discrimination claim. See
Cosby v. Tawanna, No. 3:19-CV-401 (MPS), 2019 WL
1921709, at \*5 (D. Conn. Apr. 30, 2019) (citing 🚩 Barnes
v. Gorman, 536 U.S. 181, 189, (2002) ("Because punitive
damages may not be awarded in private suits brought under
Title VI of the 1964 Civil Rights Act, it follows that they
may not be awarded in suits brought under § 202 of the
ADA and § 504 of the Rehabilitation Act.")) (explaining that
"[p]unitive damages are not available in private suits under
the ADA or the [Rehabilitation Act].''); see also Askins v.

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 18 of 58

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

N.Y.C. Transit, No. 11-CV-6371 (PGG), 2013 WL 142007, at *6 (S.D.N.Y. Jan. 8, 2013) (same). [9] Declaratory relief under the ADA is also unavailable. See Torres, 2020 WL 7316120, at *4; see also T.W. v. N.Y. State Board of Law Examiners, 16-CV-3029 (RJD/MMH), 2022 WL 2819092, at *8 (E.D.N.Y. July 19, 2022) ("The declaratory relief T.W. seeks — a declaration that the individual Board member defendants violated Title II — is plainly foreclosed by the Ex parte Young doctrine."). However, "prospective injunctive relief [ ] may be asserted against [ ] individual defendants [ ] in their official capacities[ ]" under Title II of the ADA. Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). [10]

**\*8** Whether punitive damages are available for an ADA retaliation claim is not as straightforward as the Second Circuit has not explicitly addressed the issue. See Edwards v. Brookhaven Sci. Assocs., LLC, 390 F. Supp. 2d 225, 234 (E.D.N.Y. 2005) (citations omitted) (explaining that "the Second Circuit, without analyzing the issue, has affirmed an award of compensatory damages in a retaliation case brought under the ADA[ ]"; "employees who prevail on a claim under Title I of the ADA may recover compensatory and punitive damages and demand and receive a trial by jury[ ]" and the remedies available for retaliation under the ADA are commensurate with those available under Title I[.]"). At this juncture, the undersigned need not determine whether plaintiff could recover punitive damages for an ADA retaliation claim because, as explained infra, plaintiff has not sufficiently stated a claim for relief.

### a. Discrimination

To support an ADA discrimination claim, "a plaintiff must show the following: (1) plaintiff is a qualified individual with a disability; (2) plaintiff was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by [the] public entity; and (3) such exclusion or discrimination was due to [plaintiff's] disability. B.C. v. Mount Vernon Sch. Dist., 837 F.3d 152, 158 (2d Cir. 2016) (citation and quotation marks omitted). "Although the scope of Title II is not limitless, the phrase services, programs, or activities has been interpreted to be a catch-all phrase that prohibits all discrimination by a public entity." Hulett v. City of Syracuse, 253 F. Supp. 3d 462, 484 (N.D.N.Y. 2017) (quoting, inter alia, Noel v. N.Y.C.

Taxi & Limousine Comm'n, 687 F.3d 63, 68 (2d Cir. 2012)) (quotation marks and internal citation omitted). [11]

As with her original complaint, here too, plaintiff's claim fails because she has not plausibly alleged a "disability." Dkt. No. 6 at 13-15. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[ ]." 42 U.S.C. § 12101(1).

### i. Whether plaintiff has, or has a record of, a physical or mental impairment that substantially limits one or more major life activities

"[A] plaintiff who seeks to show that he [or she] is disabled within the meaning of the ADA must do more than 'merely submit evidence of a medical diagnosis of an impairment.' " Sussle v. Sirina Prot. Sys. Corp., 269 F. Supp. 2d 285, 305 (S.D.N.Y. 2003) (quoting Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S 184, 198 (2002), overturned on other grounds by ADA Amendments Act of 2008, Pub. L 110-325, 122 Stat. 3553 (Jan. 1, 2009)). "A diagnosis alone is insufficient to establish disability under the statute." Ibela v. Allied Universal, No. 21-1995-CV, 2022 WL 1418886, at *2 (2d Cir. May 5, 2022) (citing Toyota Motor Mfg., 534 U.S at 198). Additionally, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working[ ]"; as well as "major bodily functions" such as "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions' within the definition of 'major life activities.' " 42 U.S.C. § 12102(2) (A),(B).

**\*9** The Second Circuit has clarified that "the substantial-limitation requirement in the definition of 'disability' is not an exacting one." Hamilton v. Westchester Cnty., 3 F.4th 86, 92 (2d Cir. 2021). The substantial-limitation inquiry "usually will not require scientific, medical, or statistical analysis," and is "made without regard to the ameliorative effects of mitigating measures[.]" 29 C.F.R. § 1630.2(j)(1)(v), (vi); see also 42 U.S.C. 12102(4)(E). Additionally, "a plaintiff's

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 19 of 58

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

actual disability claim under the ADA does not fail solely because he [or she] failed to "state that his [or her disability] will be permanent or chronic ... [or] indicate the duration or long-term impact of his [or her] impairment such that the Court may infer that his [or her] injury was not temporary." Id. at 93-94 (citation and quotation marks omitted) (alterations in original). However, "[w]hile an impairment lasting less than six months *can* constitute a disability since the 2008 amendments, it obviously does not follow that such an impairment *will* constitute a disability." Id. (citation omitted); see 28 C.F.R. § 35.108(d)(1)(i).

Plaintiff does not explicitly state what her "disability" is but asserts that she had a stroke and was hospitalized, and that defendant did not believe her hospitalization and "her health and safety" were reason enough to adjourn the custody proceeding. [12] Am. Compl. at 13-17. Plaintiff has not alleged any facts explaining how her stroke or hospitalization substantially limited one or more of her major life activities. See generally Am. Compl. In the hospital record documenting plaintiff's stroke, it was noted that an "[e]chocardiogram was found to have global hypokinesis with ejection fraction of 40-45%." Id. at 15. The hospital record also notes that plaintiff was diabetic and had low iron form uterine bleeding. See Am. Compl. at 15. However, plaintiff does not allege that either of these conditions caused her hospitalization or are a "disability." See generally Am. Compl.

Although plaintiff provided documentation to corroborate that she was in the hospital following a stroke, there is no indication of how it limited her activities. See id. at 15-16. This is insufficient to establish a "disability." See Ouderkirk, 2021 WL 4958845, at *5 (determining that the plaintiff's complaint "failed to allege facts plausibly suggesting that [the p]laintiff is disabled within the meaning of the ADA" where the plaintiff alleged that the defendant "took [the p]laintiff's arm brace that she 'wore for a disability and subjected her to several weeks of physical pain.' "); but see Bernheim v. N.Y.C. Dep't of Educ., No. 19-CV-9723 (VEC/JLC), 2021 WL 2619706, at *8 (S.D.N.Y. June 25, 2021) (concluding that the plaintiff "sufficiently alleged a disability under the ADA by pleading" "that her severe irritable bowel syndrome ("IBS")" has substantially limited her ability to work. Specifically, she alleges that due to her severe IBS, she has had to 'take a number of absences on an intermittent basis' and also points to a 'six month medical sabbatical' she took for her condition.... [The plaintiff] has thus sufficiently alleged a disability under the ADA by pleading that the irregularity of her bowel functions, due to her 'severe'

IBS, limited her ability to attend her teaching job on an intermittent to long term basis."), report and recommendation adopted, 2021 WL 4198126 (S.D.N.Y. Sept. 15, 2021); Blair v. SUNY Univ. at Buffalo, No. 17-CV-1317S, 2020 WL 695870, at *6 (W.D.N.Y. Feb. 11, 2020) (explaining that the plaintiff's complaint referring "to a need for 'frequent visits to the bathroom' to manage his Crohn's disease[ ]" and "his allegation of 'low blood volume' " is sufficient to establish a disability).

**\*10** It is generally known that a stroke impacts numerous functions including, for example, walking, memory, emotion regulation, and talking. [13] Plaintiff's echocardiogram also indicated that she had an "ejection fraction[.]" Am. Compl. at 15. If an ejection fraction is between forty to fifty-five percent, that is "[b]elow normal heart function. Can indicate previous heart damage from heart attack or cardiomyopathy." [14] This result appears to indicate that plaintiff's circulatory system was not functioning perfectly. See 42 U.S.C. § 12102 (including "the operation of a major bodily function" such as "circulatory" in the definition of "a major life activity"). However, neither the hospital reports, nor plaintiff's amended complaint indicate how plaintiff's impairments substantially limited her in one or more major life activity and it was only through the undersigned's independent research that it learned of the symptoms from a stroke and an ejection fraction that may be experienced by the general public. See generally Am. Compl.; see O'Connor v. N.Y. State Dep't of Fin. Servs., No. 1:21-CV-00828 (BKS/ATB), 2022 WL 3998099, at *3 (N.D.N.Y. Sept. 1, 2022) (The "[p]laintiff fails to identify any activity that her depression or PTSD impairs. But even assuming [the p]laintiff sufficiently alleged the first two steps with respect to hearing loss, depression, and PTSD, the Amended Complaint is devoid of factual details that would allow an inference that these impairments 'substantially limit' any major life activity."); Owens v. Longo, No. 06-CV-0281 (GLS/DRH), 2008 WL 84594, at *6 (N.D.N.Y. Jan. 7, 2008) ("[A] plaintiff will not automatically be found disabled upon presentation of records of a medical appointment or surgery regarding an impairment."), aff'd, 326 F. App'x 626 (2d Cir. 2009) (summary order); Horwitz v. L. & J.G. Stickley, Inc., 20 F. App'x 76, 80 (2d Cir. 2001) (summary order) ("Because past hospitalization, even coupled with continued treatment, does not create a record of a substantially limiting medical condition, the plaintiff was not protected by the ADA.").

Although the standards to be applied are liberal for pro se plaintiffs and the definition of "disability" is to be construed

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 20 of 58

broadly, plaintiff has failed to allege any facts concerning how any impairment limits her major life activities other than her being in a generally "weakened[,]" "[s]ick," and "crushed" state. Am. Compl. at 17. This is insufficient to plead a qualifying disability under the ADA. See O'Connor, 2022 WL 3998099, at *3 (citations omitted) ("While courts broadly apply the term 'substantially limits,' a '[p]laintiff still must plead sufficient facts to raise a right to relief above a speculative level.' ").

### ii. Whether plaintiff was "regarded as" having an impairment that substantially limits one or more major life activities

A "disability" can be established if an individual is "regarded as having" an impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1)(C). An individual can be "regarded as having such an impairment" "if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." Id. § 12102(3)(A). A "plaintiff need only establish that [the] defendant regarded him [or her] as having a mental or physical impairment and is 'not required to present evidence of how or to what degree [defendant] believed the impairment affected him [or her].' " Rodriguez v. Verizon Telecom, No. 13-CV-6969 (PKC/DCF), 2014 WL 6807834, at *5 (S.D.N.Y. Dec. 3, 2014) (quoting Hilton v. Wright, 928 F. Supp. 2d 530, 554 (N.D.N.Y. 2013)). However, "[a]n individual is not 'regarded as having [a disability]' if the public entity demonstrates that the impairment is, objectively, both 'transitory' and 'minor,' with 'transitory' statutorily defined as 'lasting or expected to last six months or less.' " Hamilton v. Westchester Cnty., 3 F.4th 86, 94 (2d Cir. 2021) (quoting 28 C.F.R. § 35.108(f)(2)); see also 42 U.S.C. § 12102(3)(B).

Plaintiff asserts that she "made a reasonable request to adjourn the court date and necessary for the provisions of her health and safety[.]" Am. Compl. at 16-17. The hospital record similarly states that "because Family Court judge did not consider her hospitalized status as justification to delay deciding on custody for her minor children, ... discharge was attested in order for patient to appear in family court." Id. at 15. There is no indication of what defendant was told or believed concerning plaintiff's "hospitalization[,]" such as whether or what physical or mental impairment

plaintiff had or how long it would last. [15] Id. Whether a plaintiff is "regarded" as having a disability is "a question of intent[.]" Francis v. City of Meriden, 129 F.3d 281, 284 (2d Cir. 1997). Plaintiff has not alleged what defendant believed or perceived concerning an impairment. See generally Am. Compl. For instance, there is no indication if defendant believed the veracity of plaintiff's statement that she was in the hospital, or that she was suffering from any mental or physical impairment. See Sacks v. Gandhi Eng'g Inc., No. 11-CV-5778 (DAB/DF), 2013 WL 8282955, at *13 (S.D.N.Y. Aug. 23, 2013) (citing 29 C.F.R. § 1630.2(h)(1) ("Physical or mental impairment" to mean "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine.")) (concluding that there was sufficient evidence to withstand summary judgment where the defendant told the plaintiff he was fired because of "his lack of 'agility' "), report and recommendation adopted, 999 F. Supp. 2d 629, 636 (S.D.N.Y. 2014); see also Laface v. E. Suffolk Boces, 349 F. Supp. 3d 126, 147 (E.D.N.Y. 2018) (citation omitted) ("While the [p]laintiff has alleged that he informed the [d]efendants of his disability, he has not alleged that his employer, BOCES, regarded him as disabled under the ADA. In fact, even when BOCES agreed to temporarily accommodate his disability, [a defendant] specifically noted that 'it is not clear we are obligated to provide you with an accommodation.' ").

**\*11** Accordingly, plaintiff has not shown that she was "regarded as" having a disability within the meaning of the ADA. Cf. Gentile v. Potter, 509 F. Supp. 2d 221, 238 (E.D.N.Y. 2007) (citation omitted) ("Mere knowledge is insufficient to prove 'either that the employer regarded the employee as disabled or that the perception caused the adverse employment action.' "). As plaintiff has not sufficiently plead a "disability" or that defendant "regarded" her as having a disability, the undersigned recommends dismissing plaintiff's ADA discrimination claims against defendant in his official capacity without prejudice.

As to the undersigned's April 28, 2022, Report-Recommendation and Order discussion concerning the sufficiency of the original complaint and whether plaintiff was denied access to services "because of" a disability, the undersigned clarifies that it does not appear that

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 21 of 58

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

plaintiff is making an intentional discrimination claim. Dkt.
No. 6 at 13-15. Rather, plaintiff is making a reasonable
accommodation claim. See Am. Compl. at 2, 16-17. To
plead such a claim, plaintiff is not "required [to] pro[ve]
that the defendants' actions were motivated by animus
towards the [disabled]." Amato v. McGinty, No. 1:17-
CV-1280 (GLS/TWD), 2019 WL 8064011, at *3 (N.D.N.Y.
Aug. 7, 2019) (quoting 🚩 Good Shepherd Manor Found.,
Inc. v. City of Momence, 323 F.3d 557, 562 (7th Cir.
2003)). Rather, plaintiff "must [ ] 'demonstrate that a denial
of benefits occur[ed] ... because of [her] disability.' " Id.
(citing 🚩 Henrietta D. v. Bloomberg, 331 F.3d 261, 278 (2d
Cir. 2003)) (internal quotation marks and citations omitted).
"Quite simply, the demonstration that a disability makes it
difficult for a plaintiff to access benefits that are available
to both those with and without disabilities is sufficient to
sustain a claim for a reasonable accommodation." Henrietta,
at 277. However, as plaintiff has not sufficiently alleged
a disability, the undersigned need not determine whether
plaintiff sufficiently alleged that a disability caused her
difficulty accessing any "benefits[ ]" that would amount to
a denial of a "reasonable accommodation." Id. at 282
(citation omitted) ("A 'reasonable accommodation' is one
that gives the otherwise qualified plaintiff with disabilities
'meaningful access' to the program or services sought.").

### b. Retaliation

To plead a claim for retaliation under the ADA, there
must be facts alleging that: "(i) a plaintiff was engaged in
protected activity; (ii) the alleged retaliator knew that [the]
plaintiff was involved in protected activity; (iii) an adverse
decision or course of action was taken against [the] plaintiff;
and (iv) a causal connection exists between the protected
activity and the adverse action." 🚩 Weixel v. Bd. of Educ.
of City of N.Y., 287 F.3d 138, 148 (2d Cir. 2002) (citations
omitted). "Requesting reasonable accommodations for a
disability may also constitute protected activity." Konieczny
v. N.Y. State Div. of Parole, 647 F. Supp. 2d 256, 264
(W.D.N.Y. 2009) (citation omitted). "Generally, any activity
designed to resist or antagonize ...; to contend against; to
confront; resist; [or] withstand discrimination prohibited by
Title VII constitutes a protected oppositional activity." Straw
v. Wolters Kluwer United States, Inc., No. 20-CV-3251
(LLS), 2020 WL 2115177, at *4 (S.D.N.Y. May 1, 2020),
appeal dismissed (July 2, 2020) (quotation marks omitted).

(quoting 🚩 Littlejohn v. City of N.Y., 795 F.3d 297, 317 (2d
Cir. 2015)). "[A] plaintiff pursuing a retaliation claim need
not prove that he or she was actually 'disabled' within the
meaning of the ADA." 🚩 Frantti v. N.Y., 414 F. Supp. 3d 257,
290 (N.D.N.Y. 2019) (citation omitted).

 **\*12**  Plaintiff's initial reference to a retaliation claim is in
her recitation of various statutes, in which she includes the
ADA's retaliation provision, 🚩 42 U.S.C. § 12203. See Am.
Compl. at 1. Plaintiff then states that defendant's "willfully
brazen behavior can no longer threaten my family and/
or retaliate against potential witnesses, and profit off of
someone else's loss." Id. at 2. Plaintiff explains that defendant
"harassed, intimidated, and threatened [plaintiff's sister] with
incarceration if she interfered with watching [plaintiff's]
children." Id. at 17. Although is it possible for a retaliation
claim to be based on action taken towards a thirty-party,
plaintiff does not allege that defendant acted in such a way
towards plaintiff's sister because of an exercise of protected
activity. But see 🚩 Thompson v. N. Am. Stainless, LP, 562
U.S. 170, 174-75 (2011) (explaining that in the context of a
Title VII claim, retaliation against a third party may constitute
an adverse action if it would have dissuaded the plaintiff
from engaging in his or her protected activity); 🚩 Lovejoy-
Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d
Cir. 2001) ("We analyze a retaliation claim under the ADA
using the same framework employed in Title VII cases."). It is
also not clear whether plaintiff contends that defendant took
actions against her sister because of her request to adjourn the
proceedings, because plaintiff was in the hospital, or for some
other non-disability related reason. See Am. Compl. at 17.

Plaintiff does not otherwise allege facts concerning retaliation
against her for engaging in protected activity. See generally
Am. Compl. Plaintiff does not assert, for example, that any
adverse action was taken against her because she "made a
reasonable request to adjourn the court date[.]" Id. at 16.
Rather, plaintiff states that defendant denied her request "with
blatant disrespect for the well being of [p]laintiff" and he
subsequently granted her children's father custody, "without
explanation[.]" Id. at 17; but see 🚩 Vega v. Hempstead Union
Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015) ("A retaliatory
purpose can be shown indirectly by timing: protected activity
followed closely in time by adverse [ ] action."). Plaintiff
also states that defendant's conduct was the result of "cultural
and class bias" and was an "outrageous unauthorized social

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 22 of 58

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

experiment[ ]" which does not implicate retaliation against protected activity under the ADA. Am. Compl. at 3.

Although plaintiff's pro se complaint is to be read liberally and to raise the strongest arguments it suggests, it is not the function of initial review to read any claims into the complaint. See Triestman, 470 F.3d at 477 (citations and quotation marks omitted) ("There are many cases in which we have said that a *pro se* litigant is entitled to 'special solicitude,' that a *pro se* litigant's submissions must be construed 'liberally,' and that such submissions must be read to raise the strongest arguments they 'suggest[.]' At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not 'consistent' with the *pro se* litigant's allegations, or arguments that the submissions themselves do not 'suggest[.]' ").

As plaintiff has not elaborated on any purported retaliation claim beyond listing the statute as one of many under which she seeks to bring this action, and using the word "retaliation," the undersigned recommends dismissing it without prejudice. See Amato v. McGinty, No. 1:21-CV-00860 (GLS/TWD), 2022 WL 226798, at *9 (N.D.N.Y. Jan. 26, 2022) (citing Barr v. Abrams, 810 F.2d 358, 362 (2d Cir. 1986) (the Second Circuit has repeatedly held, "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning")) (explaining that "[t]he use of 'buzz words' such as 'disability,' 'accommodation,' and 'retaliation' does not cure a pleading defect.... She does not allege any facts suggesting a plausible connection between her alleged PTSD and '[Legal Abuse Syndrome]' and the actions that were taken against her in the state court proceedings.").

#### 4. "Tortious Interference with Parental Rights Under the Common Law"

Plaintiff purports to assert a claim of "tortious interference with parental rights under the common law[.]" Am. Compl. at 1. The Eastern District of New York has explained that "[w]ith respect to 'parental' rights, [the] plaintiffs have not cited, nor has this Court identified, any cause of action related to such rights. Most cases involve the more specific right of custody...." Decter v. Second Nature Therapeutic Program, LLC, 42 F. Supp. 3d 450, 457 (E.D.N.Y. 2014).

"[T]he existence and contours of a tort cause of action for interference with parental custody under New York law are far from clear." Pittman by Pittman v. Grayson, 149 F.3d 111, 120 (2d Cir. 1998). However, "[t]he 'unlawful taking or withholding of a minor child from the custody of the parent entitled to such custody is a tort.' " Whalen v. Cnty. of Fulton, 941 F. Supp. 290, 299 (N.D.N.Y. 1996) (quoting Kajtazi v. Kajtazi, 488 F. Supp. 15, 18 (E.D.N.Y. 1978)), aff'd, 126 F.3d 400 (2d Cir. 1997). "The plaintiff must have a legal right to custody in order to possess a cause of action for custodial interference." Id. (citation omitted).

**\*13** "[T]he State of New York has not waived its Eleventh Amendment immunity to suit in federal court for state common law [torts]." Hayut v. State Univ. of N.Y., 127 F. Supp. 2d 333, 340 (N.D.N.Y. 2000); cf. Lambert v. N.Y. State Office of Mental Health, No. 97-CV-1347 (JG), 2000 WL 574193, at *7 (E.D.N.Y. Apr. 24, 2000) ("Likewise, the Eleventh Amendment bars [the plaintiff]'s common law tort claim for intentional infliction of emotional distress."), aff'd, 22 F. App'x 71 (2d Cir. 2001) (summary order). Judicial immunity has also been applied to common law torts. See, e.g., Holbert v. Cohen-Gallet, No. 05-CV-1281 (NGG), 2006 WL 47452, at *6 (E.D.N.Y. Jan. 9, 2006) ("Because the doctrine of judicial immunity rests on the need for uninhibited judicial decision-making, immunity extends to the exercise of judicial power by any judicial officer.... Presiding over the [the p]laintiff's custody modification proceeding was without question a judicial act and [the defendant], as a Family Court Referee, had jurisdiction to do so. Thus, [the defendant's] actions in the courtroom ... cannot be grounds for tort liability against her."). As such, defendant is immune in both his individual and "judicial" capacities.

Further, "a district court 'cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction.' " Cohen v. Postal Holdings, LLC, 873 F.3d 394, 399 (2d Cir. 2017) (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996)). As the undersigned recommends denying plaintiff's federal claims, the undersigned also recommends declining to exercise supplemental jurisdiction over any purported state law claim. See id. (citing Kolari v. N.Y. Presbyterian Hosp., 455 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 23 of 58

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

claims over which the federal court has jurisdiction have been dismissed)). [16]

## D. Amendment of the Complaint

"Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile." Griffin v. Doe, 71 F. Supp. 3d 306, 319-20 (N.D.N.Y. 2014) (citing Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)). "[A]n opportunity to amend is not required where the plaintiff has already amended the complaint." Tafari v. McCarthy, 714 F. Supp. 2d 317, 339 (N.D.N.Y. 2010) (citation omitted). In light of plaintiff's pro se status, it is recommended that she be afforded another opportunity to amend her complaint for the claims that defendant is not immune and where there is a cognizable cause of action. See Amato, 2022 WL 226798, at *12 ("[I]n light of [the p]laintiff's *pro se* status and in an abundance of caution, as was the case in the related action, better pleading—addressing the deficiencies outlined above—could potentially save [the p]laintiff's ADA claim for prospective injunctive relief against Judge McGinty from being *sua sponte* dismissed on initial review.").

## III. Appointment of Counsel

**\*14** In Judge Suddaby's June 13, 2022, Decision and Order, he addressed plaintiff's two motions to appoint counsel. See Dkt. Nos. 4, 7; Dkt. No. 8 at 2-3. Judge Suddaby denied plaintiff's request for counsel without prejudice because plaintiff had not substantiated her efforts to procure counsel, it was too soon to determine whether plaintiff's claims were of substance, and the other relevant factors weighed against granting the request. See Dkt. No. 8 at 2-3.

In her amended complaint, plaintiff states that "[a]lthough this Court noted that this Pro Se litigant is able to effectively litigate this action thus far, ... my disabilities put me in an inferior position and not on equal ground as a highly trained and skilled professional attorney"; therefore, she "specifically request[s] appointed counsel to ensure a just and proper opportunity to further present my claim...." Am. Compl. at 2.

"[T]he indigent [person must demonstrate that they are] unable to obtain counsel before appointment will even be

considered." Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986). Plaintiff has not asserted any information indicative of an attempt to secure counsel. See generally Am. Compl. Additionally, "in deciding whether to appoint counsel ... the [court] should first determine whether the indigent's position seems likely to be of substance." Hodge, 802 F.3d at 61. If the claim is likely to be of substance, the Court must consider certain factors, including

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues, and any special reason ... why appointment of counsel would be more likely to lead to a just determination.

Id. "[A]ppointments of counsel are not to be granted 'indiscriminately.'" Edwards v. Troy Police Dept., No. 1:19-CV-543 (LEK/CFH), 2019 WL 13217234, at *1 (N.D.N.Y. Oct. 23, 2019) (quoting Cooper v. A. Sargente & Co., Inc., 877 F.2d 170, 172 (2d Cir. 1989)). "Although 28 U.S.C. § 1915(e)(1) authorizes the court 'to request an attorney to represent any person unable to afford counsel,' a civil litigant has no constitutional right to the assistance of counsel." Id. (quoting Berrios v. N.Y.C. Housing Auth., 564 F.3d 130, 135 (2d Cir. 2009)).

As Judge Suddaby stated in his Decision and Order, "because [d]efendant has not yet appeared and answered, the Court is unable to determine, as a threshold matter, whether [p]laintiff's claims are likely to be of substance." Dkt. No. 8 at 2-3 (citing Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1341 (2d Cir. 1994)). Next, "although plaintiff contends that h[er] mental illness/diagnoses make it difficult for h[er] to litigate this action, it appears that plaintiff has been able to represent h[erself] thus far by communicating with the Court and filing a detailed complaint in this action." Edwards, 2019 WL 13217234, at *2. Plaintiff was able to then review the undersigned's Report-Recommendation and Order, and Judge Suddaby's Decision and Order and produce an amended complaint attempting to address the faults identified in her

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 24 of 58

original complaint. See Am. Compl. As such, it does not appear that, as to date, plaintiff has been unable to effectively litigate this action. Finally, "[a]ppointment of counsel in civil cases is a privilege which is justified only by exceptional circumstances, not a right accorded to any plaintiff who would be better equipped or would feel more comfortable with legal representation." Edwards, 2019 WL 13217234, at *2. "Lack of knowledge of the law does not suffice to demonstrate that appointment of counsel would increase the likelihood of a just determination in this case." Id. Accordingly, plaintiff's request for the appointment of counsel is denied without prejudice.

### IV. Conclusion

**\*15** **WHEREFORE**, for the reasons set forth herein, it is hereby

**RECOMMENDED**, that any purported claims under 18 U.S.C. §§ 241 and 242, 42 U.S.C. § 12301(3)(5)(7)(A)(B), 42 U.S.C. § 12182, and "tortious interference with parental rights under the common law" (Dkt. No. 9) be **DISMISSED WITH PREJUDICE WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's purported (1) 42 U.S.C. § 1985 claim against defendant in his individual and official capacities seeking injunctive and declaratory relief; and (2) ADA claims against defendant in his official capacity seeking injunctive relief (Dkt. No. 9) be **DISMISSED WITHOUT PREJUDICE WITH LEAVE TO AMEND**;[17] and it is further

**RECOMMENDED**, that should the District Judge adopt this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file a second amended complaint, and if plaintiff does not file a second amended complaint it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in judgment being entered against plaintiff on these claims without further order by the Court; and it is further

**ORDERED**, that plaintiff's request for the appointment of counsel is **DENIED without prejudice**.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[18]

### All Citations

Not Reported in Fed. Supp., 2022 WL 17418268

---

### Footnotes

1    The language of § 1915 suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

2    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

Case 3:23-cv-01597-AMN-ML    Document 9    Filed 01/17/24    Page 25 of 58

3    Hematochezia is bleeding in the stools. See Stedmans Medical Dictionary 397760 (Nov. 2014).

4    Because of plaintiff's pro se status, the undersigned has considered the allegations in the amended complaint along with the documents attached thereto. See, e.g., Anthony v. Murphy, No. 5:15-CV-00450 (DNH/TWD), 2015 WL 1957694, at *1 n.1 (N.D.N.Y. Apr. 28, 2015) ("[I]n light of [the p]laintiff's pro se status, the Court has considered the allegations in, and attachments to, both [the p]laintiff's original and amended/supplemental complaints upon its initial review."), report and recommendation adopted, No. 5:15-CV-450 (DNH/TWD), 2015 WL 3409261 (N.D.N.Y. May 27, 2015).

5    Plaintiff submits a letter addressed to defendant wherein she complained that her children's appointed attorney, William Pape, was ineffective, and she sought a different attorney. See Am. Compl. at 8. Plaintiff does not make any substantive allegations against Mr. Pape in her amended complaint or name him as a defendant. See generally Am. Compl.

6    At the end of her amended complaint, plaintiff recites the standards for a motion for summary judgment pursuant to Fed. R. Civ. P. 56 and caselaw concerning qualified immunity. See Am. Compl. at 18-21. Neither are applicable to the standards applied at this stage.

7    Plaintiff states that see seeks "zero monetary damages, punitive damages[.]" Am. Compl. at 1. It is unclear whether the "zero" extends to punitive damages. Id.

8    Plaintiff attaches to her amended complaint protective orders against the children's father from December 2015 and March and October 2019, a visitation order from April 2019, and a family offense petition from October 2019. See Am. Compl. at 5-7, 9-12. In her original complaint, plaintiff specifically requested "injunctive relief and a permanent restraining order against [defendant] to stop his abuse and to avoid any further harm." Compl. at 6. She also sought declaratory relief in the form of statements that (1) "the policies, practices, procedures and standards [of d]efendant apply to her contested lawsuit proceedings, contested motion hearings and trail to issued Custody and related Orders are 'program activities'[; (2)] Custody Order are 'services' as defined by ADA which ADA equal rights, opportunities and benefits, direct threat risk prevention modification rights and accommodation rights apply to[; and (3)] declar[e d]efendant[']s [ ] practices ... a[s] unconstitutional." Id. at 5. The undersigned previously noted that any relief concerning past custody orders and any intervention into ongoing family court proceedings are likely barred by the Younger and Rooker-Feldman doctrines. See Dkt. No. 6 at 16, n.7. Plaintiff does not state in her amended complaint the precise declaratory or injunctive relief she seeks. See generally Am. Compl.

9    If plaintiff were to seek monetary damages, the undersigned incorporates by reference its discussion in its April 28, 2022, Report-Recommendation and Order concerning Congress' abrogation of Eleventh Amendment immunity concerning money damages. See Dkt. No. 6 at 14, n.6; see also Colliton v. D'Alessio, No. 22-CV-7200 (LTS), 2022 WL 4110191, at *3, n.2 (S.D.N.Y. Sept. 6, 2022) (citations omitted) (declining to address whether Congress abrogated sovereign immunity for Title II claims that "actually violate[ ] the Fourteenth Amendment" because the plaintiff "fail[ed] to state a claim under Title II of the ADA).

10    The undersigned notes, however, that the Younger doctrine cautions against interfering with ongoing family court matters. See supra at 11-14; see also Amato, 2022 WL 226798, at *11.

11    The undersigned incorporates by reference its previous discussion concerning whether defendant is a "public entity"—an analysis that the undersigned need not perform as plaintiff has not alleged sufficient facts to surpass the threshold "disability" inquiry. See Dkt. No. 6 at 12, n.5; 14-15, n.6.

12    As explained in the undersigned's April 28, 2022, Report-Recommendation and Order, in her original complaint, plaintiff alleged that because of defendant's actions, she developed post-traumatic stress disorder

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

Case 3:23-cv-01597-AMN-ML    Document 9    Filed 01/17/24    Page 26 of 58

("PTSD"). <u>See</u> Dkt. No. 6 at 14-15; <u>see also</u> Compl. at 14. Plaintiff does not reallege any facts related to PTSD in her amended complaint. <u>See generally</u> Am. Compl.

13    Stedmans Medical Dictionary 397760 (Nov. 2014); Mayo Clinic, Stroke, https://www.mayoclinic.org/diseases-conditions/stroke/symptoms-causes/syc-20350113 (last visited September 26, 2022).

14    Ejection Fraction: What the Numbers Mean, Penn Heart and Vascular Blog, (April 13, 2022), https://www.pennmedicine.org/updates/blogs/heart-and-vascular-blog/2022/april/ejection-fraction-what-the-numbers-mean.

15    In plaintiff's original complaint, she specified that her family court attorney told defendant that plaintiff had a stroke. <u>See</u> Compl. at 6. However, even if plaintiff had repleaded this specific information, plaintiff has not sufficiently alleged what defendant's belief was concerning any impairment. <u>See generally</u> Am. Compl. Plaintiff is reminded that amended pleadings are intended to completely replace prior complaints and she must include all of the allegations, without reference to a prior complaint, that she seeks to base her claims on.

16    Plaintiff also includes a header titled "Defendant's Fraudulent Scheme to Hide and/or Tamper with Witness and/or Alter Court Records." Am. Compl. at 21. Plaintiff submitted a one-page letter from a court clerk at the Town of Rochester Justice Center which states, "We have no records pertaining to Docket No. 18070010." <u>Id.</u> at 22. Plaintiff also states that she has been unable to obtain transcripts from the relevant custody proceedings. <u>See id.</u> at 17. Plaintiff has not otherwise plead any facts that suggest that defendant has taken any actions to tamper with evidence, or hide or alter any records; thus, there are no facts on which the undersigned could find a plausible claim for relief. <u>See</u> London v. Cnty. of Ulster, No. 1:14-CV-01095 (MAD), 2015 WL 1579147, at *9 (N.D.N.Y. Apr. 9, 2015) ("While [the p]laintiff has scripted pages upon pages of accusations against these two [d]efendants, including claims of bias, coercion, and witness/evidence tampering, these accusations are a cavalcade of conclusions and not facts upon which this Court may find that a plausible claim has been pled here. Thus, we recommend dismissing these [d]efendants from this action pursuant to ⚐ 28 U.S.C. § 1915(e)(2)(B)(iii).").

17    Should the District Judge adopt this Report-Recommendation & Order, permitting plaintiff file a second amended complaint, plaintiff is advised that any second amended complaint will supersede and replace the amended complaint in its entirety. Plaintiff is not permitted to incorporate by reference any portion of earlier complaints and may not attempt to replead claims that have already been dismissed by this Court with prejudice.

18    If you are proceeding <u>pro se</u> and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. <u>Id.</u> § 6(a)(1)(c).

---

**End of Document**                                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 27 of 58

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17415121
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Tammy TERPENING, Plaintiff,
v.
Anthony MCGINTY, in both judicial
and individual capacity, Defendant.

1:21-CV-1215 (GTS/CFH)
|
Signed December 5, 2022

**Attorneys and Law Firms**

TAMMY TERPENING, Plaintiff, Pro Se, 17 Blair Road, Apt.
6, Kerhonkson, New York 12446.

**DECISION and ORDER**

GLENN T. SUDDABY, United States District Judge

 **\*1**  Currently before the Court, in this *pro se* civil
rights action filed by Tammy Terpening ("Plaintiff") against
Anthony McGinty ("Defendant"), is United States Magistrate
Judge Christian F. Hummel's Report-Recommendation
recommending that certain of the claims asserted in Plaintiff's
Amended Complaint be dismissed with prejudice, and that the
remainder of those claims be dismissed without prejudice and
with leave to amend. (Dkt. No. 10.) Plaintiff has not filed an
objection to the Report-Recommendation, and the deadline in
which to do so has expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant filings in this action, the
Court finds no error in the Report-Recommendation, clear or
otherwise: [1] Magistrate Judge Hummel employed the proper
standards, accurately recited the facts, and reasonably applied
the law to those facts. As a result, the Court accepts and adopts
the Report-Recommendation for the reasons stated therein.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Hummel's Report-
Recommendation (Dkt. No. 10) is **ACCEPTED** and
**ADOPTED**; and it is further

**ORDERED** that the following claims asserted in Plaintiff's
Amended Complaint (Dkt. No. 9) are **DISMISSED with
prejudice**:

  (1) any claims under 18 U.S.C. §§ 241 and 242,

  (2) any claims under 42 U.S.C. § 12301(3)(5)(7)(A)(B),

  (3) any claims under 42 U.S.C. § 12182, and

  (4) any claim for "tortious interference with parental rights
    under common law"; and it is further

**ORDERED** that the remaining claims asserted in Plaintiff's
Amended Complaint (Dkt. No. 9)–specifically, her claim
under 42 U.S.C. § 1985 against Defendant in his individual
and official capacities seeking declaratory and injunctive
relief, and her claims under the Americans with Disabilities
Act against Defendant in his official capacity seeking
injunctive relief–**shall be DISMISSED with prejudice**
and without further order of the Court **UNLESS, within
THIRTY (30) DAYS** of the date of this Decision and
Order, Plaintiff files a Second Amended Complaint curing
the pleading defects in those claims identified in the Report-
Recommendation; and it is further

**ORDERED** that, should Plaintiff file a Second Amended
Complaint, the Second Amended Complaint must be a
complete pleading that supersedes and replaces the Amended
Complaint in all respects and does not incorporate by
reference any portion of the Amended Complaint; and it is
further

 **\*2  ORDERED** that, should Plaintiff file a Second Amended
Complaint, the Second Amended Complaint will be referred
to Magistrate Judge Hummel for further review pursuant to
28 U.S.C. § 1915(e).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17415121

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 28 of 58

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

**Footnotes**

1    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

---

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1579147
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Willie J. LONDON, Plaintiff,

v.

COUNTY OF ULSTER; Ulster Co. D.A.
Office; Lawrence Ball, City of Kingston Court
Judge; Matthew Jankowski, Ulster County
D.A. Office; Gerard Carey, Esq, Defendants.

No. 1:14–cv–01095 (MAD/RFT).
|
Signed April 9, 2015.

**Attorneys and Law Firms**

Willie J. London, Stone Mountain, GA, pro se.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**I. INTRODUCTION**

 **\*1** Plaintiff *pro se* commenced this action against
Defendants County of Ulster, Ulster County District
Attorney's Office, Honorable Lawrence Ball, Assistant
District Attorney Matthew Jankowski, and attorney Gerard
Carey (collectively "Defendants") pursuant to 🚩 42 U.S.C. §
1983. *See* Dkt. No. 1. Thereafter, Plaintiff made an application
to proceed *in forma pauperis* ("IFP") under 🚩 28 U.S.C. §
1915. *See* Dkt. No. 2. Magistrate Judge Randolph F. Treece
granted Plaintiff IFP status but recommended that Plaintiff's
entire complaint be dismissed pursuant to 🚩 28 U.S.C. §
1915(e)(2)(B)(ii), (iii) for failure to state a claim upon which
relief can be granted and for naming defendants who are
protected by absolute immunity. *See* Dkt. No. 5. Presently
before the Court are Plaintiff's objections to Magistrate Judge
Treece's Report Recommendation and Order. *See* Dkt. No. 6.

**II. BACKGROUND**

On January 18, 2012, Plaintiff was involved in a motor vehicle
accident with one other vehicle. *See* Dkt. No. 1 at ¶ 1. Police
Officers Eckert and Zell were approximately two hundred
to three hundred feet from the accident when it occurred,
and, therefore, they were on scene quickly. *See id.* at ¶ 50.
Officer Eckert administered a field sobriety test to Plaintiff,
and, according to Plaintiff, he passed the test although Officer
Eckert advised Plaintiff that he failed. *See id.* at ¶¶ 55–
57. Plaintiff was brought to the hospital for injuries that he
sustained in the accident, and he demanded and consented to a
blood alcohol test. *See id.* at ¶¶ 6, 34. One of the two collection
tubes of blood were given to Office Eckert, who brought the
tube back to the police station. *See id.* at ¶ 59. The tube of
blood was left in Officer Eckert's personal locker for two days
and was then sent by mail to the New York State Police crime
laboratory, as alleged by Plaintiff. *See id.* at ¶ 60.

Plaintiff was given a ticket to appear at Kingston City Court
on January 26, 2012 for driving while intoxicated and failure
to yield the right of way. *See id.* at ¶¶ 9, 11. On January 19,
2012—the day after the accident, Plaintiff contacted Parole
Officer Sue Ann Lashley to advise her that he had move
from the City of Poughkeepsie to an apartment in the City of
Kingston, New York, as well as to advise Officer Lashley of
his contact with police. *See id.* at ¶ 12. Officer Lashley was
already aware of this information. *See id.* at ¶ 14. Plaintiff
appeared before Defendant Judge Ball in Kingston City Court
on January 26, 2012 and was remanded to Ulster County
Jail with bail set at \$5000. *See id* . at ¶¶ 15–16. While
being processed at the jail, Plaintiff was served with a parole
violations warrant. *See id.* at ¶ 16. At a court appearance in
April 2012,

Plaintiff was assigned counsel, Defendant Gerard Carey, and
Plaintiff provided to the Court and his assigned counsel a list
of witnesses he wanted subpoenaed for trial. *See id.* at ¶¶ 21–
23. On April 8, 2012, Plaintiff was handed a toxicology report
from the New York State Police Mid–Hudson Regional Crime
Laboratory that indicated, on the evening of the accident,
Plaintiff's ethyl alcohol percent by weight was 0.12. This was
also the day that trial was set to start, but Defendant Jankowski
served an information charging Plaintiff with a violation of
New York Vehicle and Traffic Law § 1992(2) based upon the
laboratory results. *See id.* at ¶ 25. Plaintiff was arraigned on
that information, and bail remained the same on the vehicle
and traffic violation. *See id.* at ¶ 26. However, Plaintiff was
also being held without bail on the parole violation warrant.
*See id.* at ¶ 26.

**\*2** Trial was rescheduled several times but, ultimately commenced on June 6, 2012. *See id.* at ¶ 26. Plaintiff contends that prior to trial he was not provided with "chemist reports, police reports, Rosario Material, Brady Material, Statements of all the Prosecutor's witnesses to testify at [ ] trial, as well as affidavits of prosecution witnesses before they took the witness stand" and that his objections at trial were overruled. *See id.* at ¶ 27. According to Plaintiff, this material was not provided to him until trial had commenced. *See id.* at ¶¶ 27, 32. Plaintiff claims that throughout the trial Defendants Ball, Jankowski, and Carey "were united [in] trying to convict [Plaintiff]." *See id.* at ¶ 32. In particular, Plaintiff accuses these Defendants of tampering with evidence, allowing misleading and fraudulent testimony, conspiring to deceive, trick, and hide evidence, among other things. *See id.* at ¶ 32. Allegedly, Plaintiff's repeated objections to Defendant Jankowski's use of evidence that had not previously been provided to Plaintiff were ignored by Defendant Judge Ball. *See id.* at ¶ 34.

Plaintiff's contends that, in an effort to prejudice the jury against him, Defendants Judge Ball, Jankowski, and Carey also acted to falsely file an order of protection against Plaintiff preventing his contact with the other driver in the motor vehicle accident, Jacklyn D. North. *See id.* at ¶¶ 42–44. Plaintiff also claims that Defendant Carey joined with Defendants Jankowski and Judge Ball to eliminate all of Plaintiff witnesses "from exposing the perjury, conspiracy to convict [Plaintiff] based upon fabricated testimony and perjury by prosecution witnesses." *See id.* at ¶¶ 52, 71. Defendant Carey explained at trial that, except for one, he was unable to locate Plaintiff's witnesses *See id.* at ¶ 70. The facts are not clear, but it appears that there was a compromise of Plaintiff's blood sample and/or the collection tubes were not ever labeled with Plaintiff's name. *See id.* at ¶ 36–37. Ultimately, the jury found that Plaintiff was not guilty of driving while intoxicated. *See id.* at ¶ 79.

Plaintiff returned to the Ulster County Jail on the parole violation warrant, which alleged failure to notify Officer Lashley of police contact, driving while intoxicated, and failure to yield the right of way, but the traffic violations were dismissed from the parole violations. *See id.* at ¶¶ 80, 92. Plaintiff appeared on the traffic ticket for failure to yield on June 18, 2012, and Defendant Judge Ball found him guilty and imposed a fine. *See id.* at ¶ 83. Plaintiff appeared before an Administrate Law Judge ("ALJ") for his parole violation hearing on June 25, 2012 requesting a transfer to the State of Georgia to be with his family. *See id.* at ¶ 91. The ALJ

apparently revoked Plaintiff's parole and sentenced him to twelve months with a six-month credit for time served. *See id.* at ¶ 93. Plaintiff was then transferred from county jail to the state prison system on August 17, 2012. *See id.* at ¶ 97. In the late Fall of 2012, Plaintiff was diagnosed with pneumococcal meningitis bacteremia and was hospitalized until January 2013. *See id.* at ¶¶ 99–100. Plaintiff's parole transfer to the State of Georgia was approved and, upon release from the hospital and prison, he traveled there. *See id.* at ¶ 102.

**\*3** Plaintiff contends that Defendants Ball, Jankowski, and Carey were motivated by racial prejudice when they allegedly violated his federal and state constitutional rights. *See id.* at First through Fourth Causes of Action. According to Plaintiff, Defendants conspired with parole officials, City of Kingston police officers, a New York State Police forensic scientist, a hospital nurse, and Jacklyn North to commit perjury, fraud, harassment, false arrest, unlawful imprisonment, witness tampering, and destruction of evidence. *See id.* at Fourth Cause of Action. Plaintiff is seeking monetary, injunctive, and declaratory relief. *See id.* at Prayer For Relief.

### III. DISCUSSION

**A. Standard of Review**

When a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In making this determination, "the court has the duty to show liberality towards pro se litigants," however, "there is a responsibility on the court to determine that a claim has some arguable basis in law before permitting a plaintiff to proceed with an action in forma pauperis." *Moreman v. Douglas,* 848 F.Supp. 332, 333–34 (N.D.N.Y.1994) (internal citations omitted).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y.2003) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they

lack a legal education. *Id.* at 295 (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983)) (internal quotation marks omitted). However, this does not mean that a *pro se* litigant is excused from following procedural requirements. *See id.* (citing *Showers v. Eastmond,* 00 CIV. 3725, 2001 WL 527484, *2 (S.D.N.Y. May 16, 2001)).

When a party files specific objections to a magistrate judge's report-recommendation and order, the district court makes "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**B. Report Recommendation and Order**

**\*4** Magistrate Judge Treece recommends that Plaintiff's complaint be dismissed in its entirety because Plaintiff has failed to state a cause of action for which relief can be granted and named defendants who are immune from such relief. *See* Dkt. No. 5. Magistrate Judge Treece found that Defendant Carey, as assigned counsel, is not a state actor and, therefore, can not be liable to Plaintiff under 42 U.S.C. § 1983 (" § 1983"). *See id.* With regard to Defendants Jankowski and Judge Ball, Magistrate Judge Treece found that both Defendants were absolutely immune from suit. *See id.* Although Plaintiff named Ulster County District Attorney's Office and the County of Ulster as Defendants, Magistrate Judge Treece found that Plaintiff did not assert any facts or causes of action against such entities and that the employees of these entities are not subject to suit under § 1983. *See id.* Magistrate Judge Treece acknowledges Plaintiff's voluminous and broad accusations of bias, coercion, and conspiracy but finds them to be "a cavalcade of conclusions and not facts upon which this Court may find that a plausible claim has been pled." *See id.*

**C. Plaintiff's Objections**

In his objections, Plaintiff argues that Defendant Judge Ball does not have absolute immunity from declaratory and injunctive relief. *See* Dkt. No. 6.[1] Indeed, Plaintiff does seek injunctive and declaratory relief in his complaint. *See* Dkt. No. 1 at Prayer for Relief. However, Plaintiff is not correct in his assertion that Defendant Judge Ball is not immune from such relief. "Congress statutorily provided for such immunity by amending 42 U.S.C. § 1983 to provide that in 'any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.' " *Ashmore v. State,* No. 12–CV–3032, 2012 WL 2377403, *3 (E.D.N.Y. June 25, 2012) (citing 42 U.S.C. § 1983, *as amended by* Federal Courts Improvement Act of 1996, § 309(c), Pub.L. No. 104–317, 110 Stat. 3847, 3853 (1996)); *see also Haynes v. Schimelman,* No. 3:99CV2553, 2000 WL 502623, *1 (D.Conn. Mar. 8, 2000); *Finn v. Cnty. of Albany,* No. 98–CV–844, 1999 WL 291820, *5 (N.D.N.Y. May 5, 1999); *Kampfer v. Scullin,* 989 F.Supp. 194, 201–02 (N.D.N.Y.1997).

Plaintiff does not allege in the complaint that a declaratory decree was ever entered or that declaratory relief was unavailable. Declaratory relief was available to Plaintiff, as he could have sought a writ of prohibition through an Article 78 proceeding, among other relief, or brought a declaratory judgment action in state court. *See, e.g., Matter of Green v. Demarco,* 87 A.D.3d 15 (4th Dep't 2011). Thus, any claim for injunctive relief is barred by § 1983. Plaintiff's remaining arguments are conclusory and merely recitations of those arguments previously made. Accordingly, the Court has reviewed the Report Recommendation and Order for clear error on the face of the record. The Court concludes that the Report Recommendation and Order is well-reasoned and is not clearly erroneous. Magistrate Judge Treece employed the proper legal standard, accurately recited the facts, and reasonably applied the law to those facts.

**\*5** Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991). However, the Court finds that the defects in Plaintiff's claims are substantive rather than mere form, and, as set out in Magistrate Judge Treece's Report Recommendation and Order, leave to amend in the current case would be futile. *See* Dkt. No. 5 at 8–

9. Accordingly, the Court adopts Magistrate Judge Treece's Report Recommendation and Order recommending that Plaintiff's claims be dismissed without leave to amend. The Court also declines to exercise supplemental jurisdiction pursuant to 28 U .S.C. § 1367(c)(3) over Plaintiff's state law claims under Article 1, §§ 2, 6, and 11 of the New York State Constitution, New York Penal Law, and New York Rules of Professional Conduct.

### IV. CONCLUSION

Having reviewed Magistrate Judge Treece's Report Recommendation and Order, Plaintiff's submissions, and the applicable law, the Court finds that Magistrate Judge Treece correctly recommended that the Court should dismiss Plaintiff's complaint.

In light of the foregoing, the Court hereby

**ORDERS** that Magistrate Judge Treece's Report Recommendation and Order (Dkt. No. 5) is **ADOPTED in its entirety;** and the Court further

**ORDERS** that Plaintiff's federal claims are **DISMISSED with prejudice;** and the Court further

**ORDERS** that Plaintiff's state law claims under Article 1, §§ 2, 6, and 11 of the New York State Constitution, New York Penal Law, and New York Rules of Professional Conduct are **DISMISSED without prejudice;** and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

### REPORT RECOMMENDATION and ORDER

RANDOLPH F. TREECE, United States Magistrate Judge.

The Clerk has sent to the Court for review a civil rights Complaint, filed pursuant to 42 U.S.C. § 1983, from *pro se* Plaintiff Willie J. London. Dkt. No. 1, Compl. Plaintiff has also filed a Motion to Proceed *In Forma Pauperis* ("IFP"). Dkt. No. 2. By his Complaint, Plaintiff asserts that after getting into a car accident on January 18, 2012, he was improperly charged with driving while intoxicated ("DWI") and that Kingston Police Officers fabricated evidence in order to procure a conviction. He also asserts that all the Defendants, including Matthew Jankowski, the Assistant District Attorney ("ADA") who criminally prosecuted him in Ulster County Court, and the Honorable Lawrence Ball, the judge presiding over his criminal trial, conspired to tamper with and falsify evidence and to procure perjured testimony from witnesses. Although he was acquitted of the DWI charge, Judge Ball nevertheless found him guilty of failing to yield right of way when making a left turn. During the course of the criminal trial, Plaintiff was incarcerated and, as a result of these events, he had to appear for a parole revocation hearing, where his parole was revoked, resulting in more time in prison. For a complete statement of Plaintiff's claims, reference is made to the Complaint.

### I. DISCUSSION

#### A. IFP Application

**\*6** Turning first to Plaintiff's Motion to Proceed with this Action IFP, after reviewing the entire file, the Court finds that Plaintiff meets the requirement for economic need and thus may properly proceed with this matter IFP.

#### B. Standard of Review

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had

an opportunity to respond." *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Furthermore, Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown,* 335 F. App'x 102, 104 (2d Cir.2009).

## C. Plaintiff's Complaint

**\*7** According to the Complaint, on January 18, 2012, Plaintiff was driving his car in Kingston, New York, and, as he was making a left turn, his car was struck by another vehicle. Compl. at ¶¶ 1–4. Kingston Police Officers Matthew Eckert and Andrew Zell, who are not named as defendants, quickly arrived on the scene and demanded that Plaintiff take a field sobriety test. *Id.* at ¶¶ 5 & 6. Officer Eckert told Plaintiff that he failed the test and ignored Plaintiff's demands for a blood or breathalyzer test. *Id.* at ¶¶ 6 & 7. Because Plaintiff was bleeding, he was taken by ambulance to the Kingston City Hospital where Nurse Beth Bagner, who is not named as a defendant, drew Plaintiff's blood and handed one vial of blood to Officer Eckert, while keeping a second vial at the hospital. *Id.* at ¶ 10. After receiving treatment, Plaintiff was escorted home by Officer Eckert who gave him an appearance ticket for DWI and failing to yield right of way when turning left. *Id.* at ¶ 11.

The following day, Plaintiff reported the incident to his parole officer, who had apparently already been informed of what transpired and requested that a parole violation warrant be issued. *Id.* at ¶¶ 12 & 14. On January 26, 2012, Plaintiff appeared before Judge Ball, who informed him that a "warrant for parole violation will be issued," and remanded Plaintiff to the Ulster County Jail with bail set at $5,000.00; hours later, a parole violation warrant was faxed by Plaintiff's parole officer to the jail. *Id.* at ¶ 16. On April 8, 2012, London appeared again before Judge Ball and was presented with a toxicology report prepared by a forensic scientist with the New York State Police Mid–Hudson Regional Crime Laboratory; according to Plaintiff, the report noted his "Ethyl Alcohol percent by weight" to be 0.12. *Id.* at ¶ 24. On April 18, 2012, the date Plaintiff was scheduled to stand trial, ADA Jankowski produced a " 'Prosecutor's Information' charging Plaintiff with 'DWI as a Misdemeanor VTL Section 1192(2).' " *Id.* at ¶ 25. Plaintiff remained in jail until June 6, 2012, when his trial began. [1] *Id.* at ¶¶ 18–27.

Although Plaintiff indicated he wanted to represent himself, Judge Ball appointed Gerard Carey, Esq., to assist Plaintiff. *Id.* at ¶ 23. Plaintiff drafted a list of people he wanted to subpoena for trial, but neither Judge Ball nor Attorney Carey contacted any of those individuals on Plaintiff's behalf. *Id.* at ¶¶ 23 & 52.

Plaintiff asserts that during the trial, ADA Jankowski, Judge Ball, and even Attorney Carey conspired to ensure that Plaintiff was convicted. He claims that Jankowski coached witnesses to lie and solicited perjured testimony from them, Judge Ball overruled many of Plaintiff's objections regarding false testimony and therefore allowed witnesses to testify falsely and also allowed the prosecutor to continue with the case despite failing to provide Plaintiff with evidence, and Attorney Carey failed to interview witnesses on Plaintiff's behalf, thereby compromising his ability to present a defense. *Id.* at ¶¶ 27–66 & 69–71. Nevertheless, at Plaintiff's behest, Carey delivered closing remarks to the jury on Plaintiff's behalf. *Id.* at ¶ 78.

**\*8**  Upon conclusion of the two-day trial, the jury found Plaintiff not guilty of driving while intoxicated. *Id.* at ¶ 79. Plaintiff was returned to jail pending resolution of the parole violation warrant and the ticket charging him with failure to yield right of way when turning left. *Id.* at ¶ 80. Then, on June 18, 2012, Plaintiff appeared before Judge Ball, who found Plaintiff guilty of the infraction of failing to yield right of way when turning left and assessed a monetary fine. *Id.* at ¶ 83. On June 25, 2012, Plaintiff appeared before an "Administrative Law Judge" for a "Final Parole Violation Hearing." *Id.* at ¶ 91. During that hearing, a discussion ensued regarding Plaintiff's desire to serve the rest of his parole in Georgia so he could be near his daughter. From what we can decipher, it appears that the judge revoked his parole but directed Plaintiff upon his return to jail to immediately seek a parole transfer to Georgia; the judge would put an eighteen-month "hold" to ensure all the paperwork was set, advised him that he would not have to appear before a parole board, and gave him six months jail credit for the time served while awaiting trial on the DWI charge. *Id.* at ¶¶ 92–93.

In August 2012, while in prison, Plaintiff began feeling very ill, with symptoms such as chills, shakes, sweats, dizziness, and physical pain; he also experienced great weight loss as he could not eat anything without regurgitating. *Id.* at ¶ 97. After many tests and courses of treatment, he was diagnosed as having contracted "pneumococcal meningitis bacteremia." *Id.* at ¶¶ 97–99. On January 25, 2013, Plaintiff was released from prison and was transferred to Georgia, where he would be supervised on parole. *Id.* at ¶ 102.

It is Plaintiff's view that his involvement in the car accident in January 2012 quickly evolved into an arrest and prosecution because he is a black man on parole. *Id.* at ¶ 105. He asserts that all the Defendants conspired to prosecute him with falsified evidence without taking the time to investigate the real cause of the accident, which he asserts is the other driver's fault, and that he suffered greatly as a result, including re-incarceration, during which time he lost much of his personal property and became gravely ill. *Id.* Plaintiff also asserts that the Defendants conspired with parole officers, City of Kingston Police Officers, forensic scientists, hospital nurses, and the driver of the other car "to commit perjury, fraud, harassment, for [his] false arrest and unlawful imprisonment" and further tampered with evidence and witness testimony with the aim of deceiving the jury in order to obtain a conviction. *Id.* at Fourth Cause of Action.

The Court notes that Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) (quoting *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) & 42 U.S.C. § 1983); *see also Myers v. Wollowitz,* 1995 WL 236245, at \*2 (N.D.N.Y. Apr. 10, 1995) (stating that " § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").

**\*9**  It is well-settled, however, that parties may not be held liable under § 1983 unless it can be established that they have acted under the color of state law. *See, e.g., Rounseville v. Zahl,* 13 F.3d 625 (2d Cir.1994) (noting state action requirement under § 1983); *Wise v. Battistoni,* 1992 WL 280914, at \*1 (S.D.N.Y. Dec. 10, 1992) (same) (citations omitted). State action is an essential element of any § 1983 claim. *See Gentile v. Republic Tobacco Co.,* 1995 WL 743719, at \*2 (N.D.N.Y. Dec. 6, 1995) (citing *Velaire v. City of Schenectady,* 862 F.Supp. 774, 776 (N.D.N.Y.1994) (citation omitted). Nowhere in his Complaint does Plaintiff allege that Mr. Carey was acting under color of state law, and indeed, it is clear that an appointed attorney, in representing an indigent client, is not acting under color of state law. *Polk Cnty. v. Dodson,* 454 U.S. 312, 321 (1981); *Bourdon v. Loughren,* 386 F.3d 88, 90 (2d Cir.2004) (noting that a claim for ineffective assistance of counsel is not actionable in a § 1983 proceeding and further citing *Polk Cnty. v. Dodson* for the proposition that public defenders do not act under color of state law and are not subject to suit under § 1983). Thus, having failed to state a cognizable cause of action against Defendant Carey, the Court recommends that he be dismissed from this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Additionally, the Court notes that Plaintiff has named Judge Ball and Matthew Jankowski as Defendants. However, these individuals are absolutely immune from suit. [2] *Young v. Selsky,* 41 F.3d 47, 51 (2d Cir.1994) (noting that "[j]udges enjoy absolute immunity from personal liability for acts committed within their judicial jurisdiction"); *Collins v. Lippman,* 2005 WL 1367295, at \*3 (E.D.N.Y. June 8, 2005)

(judicial immunity applies to actions seeking monetary and injunctive relief); *see also* Dory v. Ryan, 25 F.3d 81, 83 (2d Cir.1994) (noting that prosecutors are absolutely immune from liability under § 1983 in matters involving the prosecution). [3] While Plaintiff has scripted pages upon pages of accusations against these two Defendants, including claims of bias, coercion, and witness/evidence tampering, these accusations are a cavalcade of conclusions and not facts upon which this Court may find that a plausible claim has been pled here. Thus, we recommend dismissing these Defendants from this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii). Furthermore, although the caption of the Complaint includes the Ulster County D.A.'s Office and the County of Ulster, Plaintiff does not assert any facts or causes of action against such entities. Because we find that the employees of these entities are not subject to suit under § 1983, it follows that, in the absence of any specific allegations of wrongdoing, no cause of action would ensue against these entities.

In its current form, the Complaint fails to state a claim upon which relief could be granted. Under such circumstances, the Court would normally grant a *pro se* litigant, such as Plaintiff, an opportunity to amend the Complaint in order to avoid dismissal. Thompson v. Carter, 284 F.3d 411, 416 (2d Cir.2002). However, such measures are not warranted here because, as explained above, any amendment would be futile in light of the infirmities plaguing this action. Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.2000) (dismissal is appropriate where leave to amend would be futile). In light of the above discussion, it is clear that Plaintiff's civil rights Complaint cannot proceed as drafted and any amendment thereto would be futile.

## II. CONCLUSION

**\*10** For the reasons stated herein, it is hereby

**ORDERED,** that Plaintiff's *In Forma Pauperis* Application (Dkt. No. 2) is **granted;** and it is further

**RECOMMENDED,** that the entire Complaint be **dismissed,** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) & (iii), for failure to state a claim upon which relief can be granted and for naming Defendants who are protected by absolute immunity; and it is further

**ORDERED,** that the Clerk serve a copy of this Report–Recommendation and Order on Plaintiff by certified mail.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.* Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993) (citing Small v. Sec'y of Health and Human Servs ., 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

Date: February 19, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1579147

## Footnotes

1    Although not raised by Plaintiff in his objections, the Court finds that, to the extent that Plaintiff was seeking injunctive and declaratory relief against other named Defendants, Plaintiff is unable to satisfy the threshold requirement of an actual case or controversy as required by Article III of the Constitution. Plaintiff's complaint does not establish that he is any "more entitled to an injunction than any other citizen ... and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices ... are unconstitutional. City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983).

1       It appears there had been several adjournments as well as other proceedings associated with London's case during this time frame. *See* Compl. at ¶¶ 18, 22, & 26.

2       The Court notes that although immunity from suit is a defense that would be raised by a defendant, the Second Circuit has held that, for purposes of an initial review under 🚩28 U.S.C. § 1915, a court may find that a complaint is based on an indisputably meritless legal theory if a defense "appears on the face of the complaint," and may validly raise such a claim *sua sponte.* 🚩*Pino v. Ryan,* 49 F.3d 51, 53 (2d Cir.1995) (collecting cases throughout the various Circuit Courts of Appeal that have upheld 🚩§ 1915 dismissals based upon defenses that appear on the face of the complaint). The Court notes, as set forth below, that Plaintiff will have an opportunity to present any objections he has to this Court's recommendations to the assigned District Judge.

3       Additionally, although not named as a defendant, to the extent Plaintiff sought to sue the individual who revoked his parole, thus placing him in prison for additional time, she too would be entitled to immunity from suit. 🚩*Montero v. Travis,* 171 F.3d 757, 761 (2d Cir.1999) (noting that "parole board officials, like judges, are entitled to absolute immunity from suit for damages when they serve a quasi-adjudicative function in deciding whether to grant, deny or revoke parole").

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW** © 2024 Thomson Reuters. No claim to original U.S. Government Works.   8

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 37 of 58

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

## Attorneys and Law Firms

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

## DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the

additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss— the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right.

*See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

 **\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge

recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See* Camardo v. General Motors Hourly–Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P.

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:23-cv-01597-AMN-ML    Document 9    Filed 01/17/24    Page 39 of 58

72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 40 of 58

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See* LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing Ricciuti v. New York City Transit Authority, 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir.1987).

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01597-AMN-ML    Document 9    Filed 01/17/24    Page 41 of 58

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." Barr v. Adams, 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. Hayes v. New York City Dept. of Corrections, 84 F.3d 614, 620 (2d Cir.1996); Morales v. New York State Dep't of Corrections, 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. Hayes, 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. Gill, 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 42 of 58

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

---

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

End of Document                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 8003478
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

David Carmine LETTIERI, Plaintiff,

v.

The BROOME COUNTY HUMANE
SOCIETY, Department of Justice, and
Federal Bureau of Investigation, Defendants.
David Carmine Lettieri, Plaintiff,

v.

James Quinn Auricchio, Michael J. Roemer, Lawrence
Joseph Vilardo, and Paul E. Bonanno, Defendants.

23-CV-07777 (HG) (MMH), 23-CV-07830 (HG) (MMH)
|
Signed November 17, 2023

**Attorneys and Law Firms**

David Carmine Lettieri, Lockport, NY, Pro Se.

## <u>MEMORANDUM & ORDER</u>

HECTOR GONZALEZ, United States District Judge:

 **\*1**  The Court previously dismissed without prejudice these
two lawsuits filed by Plaintiff, who is incarcerated in a county
jail in the Western District of New York while awaiting
sentencing for a conviction of enticement of a minor in
violation of 18 U.S.C. § 2422(b). *See United States v.
Lettieri*, No. 21-cr-20, 2023 WL 6531514, at \*1 (W.D.N.Y.
Oct. 6, 2023) (denying plaintiff's post-trial motions for
judgment of acquittal or for a new trial). The Court dismissed
both of these cases, pursuant to the three-strikes rule in 28
U.S.C. § 1915(g), because Plaintiff sought *in forma pauperis*
status but had already brought three lawsuits that had been
dismissed *sua sponte* as frivolous or for failure to state a
claim. Plaintiff has responded by filing, in both cases, motions
for reconsideration and, alternatively, notices of appeal.

The Court denies Plaintiff's motions for reconsideration.
Plaintiff incorrectly argues that the prison mailbox rule
means that each of these two cases was deemed filed before
he received the third dismissal relied upon by the Court
to invoke the three-strikes rule. But when Plaintiff signed
each of the complaints in these two cases, he dated them

September 25 and 26, respectively, so those are the earliest
dates that he could have delivered them to the authorities
where he is incarcerated to be mailed to the Court. The
latest of the dismissals in Plaintiff's prior cases relied upon
by the Court—*i.e.*, his third strike—came in a decision
dated September 21, 2023, and a judgment was entered the
same day. Therefore, Plaintiff had accumulated three strikes
before he delivered either of his complaints in these two
cases to authorities at the facility where he is incarcerated.
Plaintiff's confidence that at least one of those decisions will
be overturned on appeal does not prevent him from having
accumulated three strikes. The Supreme Court has held that,
when counting whether a plaintiff has received three strikes,
"the courts must count [a] dismissal even though it remains
pending on appeal." *Coleman v. Tollefson*, 575 U.S. 532,
534 (2015). Plaintiff has not cured his ineligibility for *in
forma pauperis* status by paying the Court's filing fee, so the
Court's dismissal of these two cases based on the three-strikes
rule still stands.

In each motion for reconsideration, Plaintiff attempts to argue
why venue would be proper in this District. For example, he
argues that the dog that the Broome County Humane Society
allegedly stole from a relative at a location in the Northern
District of New York previously lived most of its life in
Queens County. He also asserts that the judges and attorneys
involved with his criminal trial in the Western District of New
York were part of a wide-ranging "RICO conspiracy," but he
provides no explanation as to how some aspect of that alleged
conspiracy supposedly took place in this District. The Court
does not find either of these two venue arguments to be valid.
But even if Plaintiff's attempts to demonstrate proper venue
in this District were successful, the Court still would not
reconsider the dismissal of Plaintiff's cases because showing
that venue is proper would not fix Plaintiff's ineligibility for
*in forma pauperis* status and his failure to pay the filing fees
to commence these two cases.

## <u>CONCLUSION</u>

 **\*2**  For the reasons set forth above, Plaintiff's motions for
reconsideration are denied. Plaintiff's cases remain dismissed
without prejudice pursuant to 28 U.S.C. § 1915(g). The
Clerk of Court is respectfully directed to mail a copy of
this order to Plaintiff. Since Plaintiff filed notices of appeal
concurrently with his motions for reconsideration, those
notices of appeal become effective as of the date of this

order denying the motions. *See* Fed. R. App. P. 4(a)(4)(B) (i). However, Plaintiff must either pay the $505.00 appellate filing fee for each case or obtain from the Second Circuit leave to appeal *in forma pauperis* because the Court reiterates its prior holding that any appeals from the Court's prior dismissal order, or this order denying Plaintiff's motions for reconsideration, would not be taken in good faith, and the Court therefore denies *in forma pauperis* status for the purpose of any appeal. 🚩 *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). Alternatively, since the Court's

dismissal of these cases is without prejudice, Plaintiff may commence these lawsuits by filing new complaints in a district where venue would be proper and by paying that district's filing fee.

SO ORDERED.

**All Citations**

Slip Copy, 2023 WL 8003478

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 45 of 58

**Powell v. United States, Not Reported in Fed. Supp. (2020)**

🚩 KeyCite Yellow Flag - Negative Treatment

Declined to Extend by   Scott v. Quay,   E.D.N.Y.,   November 16, 2020

2020 WL 5126392
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Calvin POWELL, Plaintiff,

v.

UNITED STATES of America; United States Drug
Enforcement Agency ("DEA") Detectives Sean Fogarty,
Johanna Santos, and "John and/or Jane Does" Nos.
1, 2, 3, etc., in their individual capacities; the City of
New York, a municipal entity; New York City Police
Department ("NYPD") Police Officers John Doherty,
and "Richard and/or Rachel Roes Nos. 1, 2, 3, etc., in
their individual capacities; and Investigators and Officials
of the Office of the Special Narcotics Prosecutor for
the City of New York "Stanley and/or Sally Soes" Nos.
1, 2, 3, etc., in their individual capacities, Defendants.

19 Civ. 11351 (AKH)
|
Signed 08/31/2020

**Attorneys and Law Firms**

Marc Augustine Cannan, Beldock Levine & Hoffman LLP,
New York, NY, for Plaintiff.

Jennifer C. Simon, Rachael Lightfoot Doud, US Attorneys
Office, New York, NY, for Defendant United States of
America.

Andrew C. Quinn, Matthew Kelly Schieffer, Steven Joseph
Bushnell, The Quinn Law Firm, PLLC, White Plains, NY, for
Defendant Sean Fogarty.

Silvia L. Serpe, Serpe Ryan LLC, New York, NY, for
Defendant Johanna Santos.

Daniel Guillermo Saavedra, Zachary Kalmbach, New York
City Law Department, New York, NY, for Defendants The
City of New York, Superintendent John Doherty.

**OPINION & ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS**

ALVIN K. HELLERSTEIN, U.S.D.J.:

**\*1** In or around April 2018, law enforcement officials
obtained a warrant to search the first and second floors
of a three-story Bronx apartment building. In this civil
rights action, Plaintiff Calvin Powell claims that the officers
executing the search warrant found no evidence of criminality
on the first or second floors of the building, proceeded
to *exceed* the scope of the warrant by searching the third
floor, and, after finding several kilograms of cocaine on the
third floor, falsely maintained that the drugs were found
pursuant to the warrant, ultimately resulting in Powell's arrest,
imprisonment, and prosecution. The prosecution was later
dropped, however, after Powell adduced photographs taken
by officers at the scene revealing that the cocaine and other
contraband were recovered from the third floor. [1]  Powell
seeks to recover damages against the officers involved in the
search and prosecution, among other defendants, under the
Federal Tort Claim Act ("FTCA"), 🚩 *Bivens v. Six Unknown
Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct.
1999, 29 L.Ed.2d 619 (1971) ("🚩 *Bivens*"), 42 U.S.C. §
1983, and related New York state law theories. Now before
me is a motion to dismiss by one of the individual officers:
Defendant Johanna Santos. For the reasons that follow, the
motion is granted in part and denied in part.

**Factual Background**

I summarize the alleged facts and procedural history only to
the extent necessary to resolve the instant motion to dismiss. [2]

A. The Search

Powell owns a three-family, three-story apartment building
(hereinafter, the "Building") in the Bronx. *See* Complaint
("Compl."), ECF No. 1, at ¶ 24. For the last twenty years,
Powell has lived with his family on the first floor of the
Building and has rented out the second- and third-floor
apartments to others for residential use. *Id.* at ¶¶ 25-27.

**\*2** On April 18, 2018, Defendant Detective Sean Fogarty
obtained a warrant to search the first and second floors of the
Building. *See id.* at ¶¶ 44-48. The warrant was prepared by
Fogarty and supported by his affidavit. *See id.* The warrant
and affidavit both alleged that there was reasonable cause to
believe that drugs were being sold out of both the first and
second floors of the Building. *See id.* at ¶¶ 46, 49. By contrast,

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 46 of 58

**Powell v. United States, Not Reported in Fed. Supp. (2020)**

the warrant specifically stated that law enforcement had "no reason to believe" that any criminal activity was taking place on the third floor, and, as such, did not request access to that floor. *Id.*

Later in the day on April 18, Powell received a call from his probation officer, Sandra Osman. *Id.* at ¶ 30.[3] Osman informed Powell that two of her colleagues were waiting outside of his home in order to perform a "house visit," and asked Powell to meet them outside. *Id.* at ¶¶ 31-32. Complying, Powell exited his residence and was met at the sidewalk by two individuals. *Id.* at ¶ 34. After confirming Powell's identity, the two individuals stated that they were members of law enforcement and handcuffed Powell, arresting him. *Id.* at ¶¶ 34-35.

Meanwhile, Powell observed numerous law enforcement officers and vehicles arriving at the Building. *Id.* at ¶ 37. Several officers—including Fogarty and Defendants John Doherty and Johanna Santos, all of whom were members of the United States Drug Enforcement Agency's New York Drug Enforcement Taskforce—proceeded to enter Powell's first-floor apartment and search the premises. *Id.* at ¶¶ 38-39.

The officers executing the search did not find any contraband or evidence of illegal activity on the first floor. *Id.* at ¶ 50. Undeterred, the officers proceeded to the second-floor apartment, where they arrested the tenants of that unit and commenced a new search. *Id.* at ¶¶ 51-52. Once again, the officers' search of the second-floor apartment failed to turn up any evidence of criminality. *Id.* at ¶ 54.

Having found no incriminating evidence on the first or second floors and aware that the warrant confined its authorization to just those two floors, the officers present at the scene—including, *inter alia*, Fogarty and Santos—"deliberately went beyond the scope of the ... warrant" and embarked on a new search of the third floor. *Id.* at ¶¶ 55-58. Upon breaking down the door to the third-floor apartment, the officers discovered papers and personal effects that indicated that the unit was controlled and occupied by a tenant other than Powell. The officers further discovered a large quantity of cocaine, crack cocaine, and drug paraphernalia such as plastic bags containing "cutting agents" and "digital scales." *Id.* at ¶¶ 60-61.

### B. Post-Arrest Representations

Following Powell's arrest, and fully cognizant of their having violated the terms of the warrant, the officers transported Powell to detention. *See id.* at ¶¶ 65-67. Powell alleges on "information and belief" that Fogarty and Santos, among others, "agreed to falsely claim that they had recovered the drugs and other criminal evidence ... within the bounds of their warrant on the first and second floor apartments." *Id.* at ¶ 65.

In the course of processing Powell's arrest, Fogarty and Santos, among others, "prepared false and misleading arrest paperwork," which was "forwarded to an Assistant District Attorney." *Id.* at ¶¶ 69-70. For instance, Doherty prepared an arrest report that falsely asserted that the officers executing the warrant had found Powell to be "in possession of a large quantity of a controlled substance," *id.* at ¶ 71, and similarly created invoices for the evidence recovered that falsely listed Powell as the "owner" of the evidence, *id.* at ¶ 72. As another example, Santos swore to an affidavit that confirmed that the invoices created by Doherty contained a "true and detailed account of all property" seized during the search, without "correct[ing]" Doherty's false statement that Powell owned the recovered evidence, or otherwise affirmatively indicating that the arrest evidence was found in contravention of the warrant. *Id.* at ¶¶ 75-77. Fogarty likewise purposely withheld from the ADA that the evidence had been found outside the bounds of the warrant. *See id.* at ¶ 81.

### C. The Prosecution

**\*3** Acting on the representations of Doherty, Santos, and Fogarty, the Office of the Special Narcotics Prosecutor elected to prosecute Powell. *Id.* at ¶ 82. Powell was charged with criminal possession of drugs and drug paraphernalia under New York law. *Id.* at ¶ 83. Although Fogarty knew that the criminal complaint charging Powell made materially false representations, he signed it nonetheless. *See id.* at ¶ 84. As a result of the false and misleading representations given by, *inter alia*, Fogarty, Santos, and Doherty—specifically, the statements that the officers who conducted the search found Powell in possession of cocaine and drug equipment on the first two floors of the Building—a Grand Jury indicted Powell. *See id.* at ¶¶ 90-97.

Thereafter, Powell remained in detention for several months. In early May 2018, just weeks after Powell's arrest, Powell's father passed away. Due to his confinement, Powell was unable to visit with his father during his final living days; nor was he permitted to attend his father's funeral. *Id.* at ¶¶ 98-101.

In June 2018, Powell moved to suppress all of the evidence seized during the April 18 search, contending that the officers had exceeded the scope of the warrant by searching the Building's third floor. *Id.* at ¶ 102. The prosecution at first opposed Powell's motion, citing "discussions with the police officers involved in the matter"—including Fogarty, Santos, and Doherty—as evidence that the evidence had been properly recovered from the first two floors of the Building. *Id.* at ¶¶ 103-04.

At a hearing on Powell's motion to suppress, Powell produced photographs showing that the evidence had been found on the third floor. *Id.* at ¶ 106. The presiding judge ordered the prosecution and defense counsel to inspect the Building in person to determine whether the photographs corroborated Powell's argument. *Id.* at ¶¶ 107-08. After an inspection of the Building, the prosecution conceded that the evidence had been seized from the third floor and, in September 2018, dropped all criminal charges against Powell. *Id.* at ¶¶ 108-11. Powell was released from jail. In all, he had been in detention approximately five months.

### Procedural History

Powell commenced this suit in December 2019, bringing 16 counts principally for false arrest, malicious prosecution, deprivation of due process, failure to intercede, and civil rights conspiracy, in violation of the FTCA, 🔖 *Bivens*, 🔖 42 U.S.C. § 1983, and New York State law. Compl. at ¶¶ 117-203. Relevant for present purposes, Powell brings the following counts against Defendant Santos:

- <u>False arrest</u>. Santos and others caused Powell to be arrested and charged with drug possession and related charges, despite knowing that probable cause did not exist, in violation of his Fourth Amendment rights as made actionable under 🔖 *Bivens*. ("Count IV"). *Id.* at ¶¶ 138-42.

- <u>Malicious prosecution</u>. Santos and others caused Powell to be prosecuted after intentionally withholding information that would have eliminated any probable cause against him, and despite the fact that Powell was innocent, in violation of his Fourth Amendment rights as made actionable under 🔖 *Bivens*. ("Count V"). *Id.* at ¶¶ 143-48.

- <u>Due process deprivation</u>. Santos and others deprived Powell of his right to a fair trial by withholding material exculpatory evidence as to the location where the evidence was taken, in violation of his Fourteenth Amendment rights as made actionable under 🔖 *Bivens*. ("Count VI"). *Id.* at ¶¶ 149-55.

- <u>Failure to intercede</u>. Santos and others had opportunities to intercede on Powell's behalf to prevent his arrest, prosecution, and imprisonment, but declined to do so, in violation of his rights made actionable under 🔖 *Bivens*. ("Count VII"). *Id.* at ¶¶ 156-160.

**\*4** - <u>Civil rights conspiracy</u>. Santos and others agreed to deprive Powell of his right to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, and deprivations of liberty without due process of law, in violation of his Fourth and Fourteenth Amendment rights as made actionable under 🔖 *Bivens*. ("Count VIII"). *Id.* at ¶¶ 161-164.

Santos filed her motion to dismiss on May 21, 2020. Mtn. to Dismiss, ECF No. 44; Def. Mem., ECF No. 45. The motion became fully briefed on July 10, 2020. *See* Pl. Opp. Mem., ECF No. 49; Def. Reply Mem., ECF No. 50.

### Discussion

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "accept as true all of the factual allegations contained in the complaint," 🔖 *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), draw "all inferences in the light most favorable to the non-moving party's favor," 🔖 *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007), and determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," 🔖 *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quotation marks omitted).

### A. 🔖 *Bivens*

In 🔖 *Bivens*, the Supreme Court held that "a person claiming to be the victim of an unlawful arrest and search could bring

a Fourth Amendment claim for damages ... even though no federal statute authorized such a claim." 🚩 *Hernandez v. Mesa*, — U.S. ——, 140 S. Ct. 735, 741, 206 L.Ed.2d 29 (2020). The Court subsequently extended 🚩 *Bivens* to "cover two additional constitutional claims: in 🚩 *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), a former congressional staffer's Fifth Amendment claim of dismissal based on sex, and in 🚩 *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment." 🚩 *Id.* But after recognizing these three 🚩 *Bivens* claims, "the Court changed course." 🚩 *Id.*

The Court has explained that "*Bivens, Davis*, and 🚩 *Carlson* were the products of an era when the Court routinely inferred 'causes of action' that were 'not explicit' in the text of the provision that was allegedly violated," and that, "[i]n later years, [the Court] came to appreciate more fully the tension between this practice and the Constitution's separation of legislative and judicial power." 🚩 *Id.* (quoting 🚩 *Ziglar v. Abbasi*, — U.S. ——, 137 S. Ct. 1843, 1855, 198 L.Ed.2d 290 (2017)). Accordingly, the Court has expressed its "reluctan[ce] to create new causes of action," recognizing that "Congress is best positioned to evaluate 'whether, and the extent to which, ... liabilities should be imposed upon individual officers and employees of the Federal Government.' " 🚩 *Id.* (quoting 🚩 *Abbasi*, 137 S. Ct. at 1856). In light of this "change in the Court's approach to recognizing implied causes of action, ... the Court has made clear that expanding the 🚩 *Bivens* remedy is now a *disfavored* judicial activity." 🚩 *Abbasi*, 137 S. Ct. at 1857 (emphasis added) (quotation marks omitted).

If anything, "[d]isfavored" understates the change of course. The Court has "gone so far as to observe that if 'the ... three 🚩 *Bivens* cases had been ... decided today,' it is doubtful that [the Court] would have reached the same result." 🚩 *Hernandez*, 140 S. Ct. at 742-43 (quoting 🚩 *Abbasi*, 137 S. Ct. at 1856) (some alterations omitted). This observation tracks history: For "almost 40 years," the Court has "consistently rebuffed requests to add to the claims allowed under 🚩 *Bivens*." 🚩 *Id.* at 743. In all, when facing 🚩 *Bivens* claims in the modern era, the Court's main "watchword is

caution." 🚩 *Id.* at 742; *see* 🚩 *Abbasi*, 137 S. Ct. at 1856 (cautioning against creating additional implied remedies "no matter how desirable that might be as a policy matter").

**\*5** The Supreme Court's decision in 🚩 *Abbasi* outlines a "two-step framework for determining whether a 🚩 *Bivens* remedy may properly be implied." 🚩 *Bueno Diaz*, 2020 WL 1082482, at *3, 442 F.Supp.3d 701. At the first step, "a court must decide whether a plaintiff seeks damages in a new 🚩 *Bivens* context," and to do so, "must evaluate whether 'the case is different in a meaningful way from previous 🚩 *Bivens* cases decided by the Supreme Court.' " 🚩 *Id.* (quoting 🚩 *Abbasi*, 137 S. Ct. at 1859). Although the Court has not yet "endeavor[ed] to create an exhaustive list of differences that are meaningful enough to make a given context a new one," it has provided some instructive examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous 🚩 *Bivens* cases did not consider.

🚩 *Abbasi*, 137 S. Ct. at 1859-60. The Court has stressed that its "understanding of a 'new context' is broad." 🚩 *Hernandez*, 140 S. Ct. at 743. While "[s]ome differences, of course, will be so trivial that they will not suffice to create a new 🚩 *Bivens* context," 🚩 *id.* at 1865, the 'new context' test is not demanding and can be satisfied even with minor extensions and even where the claim arises out of the same constitutional provision as was previously recognized under

Case 3:23-cv-01597-AMN-ML    Document 9    Filed 01/17/24    Page 49 of 58

**Powell v. United States, Not Reported in Fed. Supp. (2020)**

*Bivens, see* Abbasi, 137 S. Ct. at 1864 ("[E]ven a modest extension is still an extension."); Hernandez, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."); Note, *Constitutional Remedies—Bivens Actions—Ziglar v. Abbasi,* 131 Harv. L. Rev. 313, 318 (2017) ("The new context inquiry is quite exacting ...")

If a given claim "does not present a new Bivens context, then such relief is not precluded, and the court may evaluate the claim for damages on the merits." Bueno Diaz, 2020 WL 1082482, at *3, 442 F.Supp.3d 701. If, on the other hand, "the court determines that the context is new, then it must proceed to analyze whether there are 'special factors counselling hesitation in the absence of affirmative action by Congress.' " Id. (quoting Abbasi, 137 S. Ct. at 1857). This analysis comprises the second step of the Abbasi framework.

The "special factors" step of the test assesses "whether there are any factors that 'cause a court to hesitate before' 'allowing a damages action to proceed.' " Bueno Diaz, 2020 WL 1082482, at *6, 442 F.Supp.3d 701 (quoting Abbasi, 137 S. Ct. at 1858). This analysis "is focused on 'whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.' " Id. (quoting Abbasi, 137 S. Ct. at 1858). As with the first step of the Abbasi framework, the Court has "not attempted to create an exhaustive list of factors that may provide a reason not to extend Bivens," but has highlighted as useful touchstones, the "risk of interfering with the authority of the other branches," any reason to believe that "Congress might doubt the efficacy or necessity of a damages remedy," and the existence of alternative means of recovery. Hernandez, 140 S. Ct. at 743, 749; *see also* Abbasi, 137 S. Ct. at 1863, 1865 (noting that "the existence of alternative remedies usually precludes a court from authorizing a Bivens action" and "when alternative methods of relief are available, a Bivens remedy usually is not").

**\*6** Even before Abbasi and Hernandez underscored the restrictiveness of the Bivens inquiry, the Second Circuit sitting *en banc* concluded that "the only relevant threshold —that a factor 'counsels hesitation'—is remarkably low. It is at the opposite end of the continuum from the unflagging duty to exercise jurisdiction." Arar v. Ashcroft, 585 F.3d 559, 574 (2d Cir. 2009). Hesitation is "a pause, not a full stop, or an abstention; and to counsel is not to require." Id. As such, hesitation is counseled "whenever thoughtful discretion would pause even to consider." Id. Whatever its precise contours, " '[s]pecial factors' is an embracing category." Id. at 574.

\* \* \* \* \*

With these principles in mind, I turn to the instant motion. Santos argues that Powell's claims against her—for false arrest; malicious prosecution; deprivation of due process; failure to intercede; and civil rights conspiracy—seek to extend Bivens and that 'special factors' counsel hesitation against such extensions. *See* Def. Mem. at 5-14. For the reasons that follow, I agree that Powell's failure to intercede and civil conspiracy claims must be dismissed. However, I disagree as to Powell's false arrest, malicious prosecution, and due process claims, and find that all three are viable under Bivens.

### 1. False arrest

Bivens "concerned an allegedly unconstitutional arrest and search carried out in New York City." Hernandez, 140 S. Ct. at 744 (citing Bivens, 403 U.S. at 389, 91 S.Ct. 1999). The Court held that the petitioner had a right of action against federal officers who had conducted a warrantless search and arrested him in his home in violation of the Fourth Amendment. *See* Bivens, 403 U.S. at 397, 91 S.Ct. 1999. In the instant matter, Powell contends that he was unconstitutionally arrested, in his New York City home, by federal officers after the officers conducted an extralegal, warrantless search of the Building's third floor, in violation of his Fourth Amendment rights. *See* Compl. at ¶¶ 39-58. The similarity of Bivens and this dispute is

readily apparent, *see, e.g.,* 🚩 *Turkmen v. Hasty,* 789 F.3d 218, 275 (2d Cir. 2015) (Raggi, *J.,* concurring) (denoting "false arrest" a "familiar 🚩 *Bivens* context[ ]"), *rev'd in part on other grounds,* 🚩 *Abbasi,* —— U.S. ——, 137 S. Ct. 1843, 198 L.Ed.2d 290, if not to Santos.

Questing to squeeze daylight between 🚩 *Bivens* and this case where there is none, Santos asserts that here, unlike in 🚩 *Bivens,* the "officers deliberately went beyond the parameters of the warrant" by searching the third floor, presumably in contrast to 🚩 *Bivens* where there was no warrant at all. Def. Mem. at 7. This distinction is entirely without difference. Whether officers conduct a search without a warrant or conduct a search in brazen disregard of the scope of a warrant makes no difference here given that 🚩 *Bivens* and later cases have sustained a right to recover for Fourth Amendment search-and-seizure violations in roughly similar cases to 🚩 *Bivens* without restricting the right based on the degree of Fourth Amendment error. *See* 🚩 *Prado v. Perez,* —— F.Supp.3d ——, 2020 WL 1659848, at * 5 (S.D.N.Y. Apr. 3, 2020) (petitioner sued "for an allegedly unconstitutional arrest and search" and the court held that this did not "differ in a meaningful way from the core 🚩 *Bivens* context," rejecting defendants' argument that the claim was different because the government agents had "an administrative warrant ... rather than no warrant at all"); *cf.* 🚩 *Abbasi,* 137 S. Ct. at 1856 ("[T]his opinion is not intended to cast doubt on the continued force, or even the necessity, of 🚩 *Bivens* in the search-and-seizure context in which it arose."). And just as there is clear 'judicial guidance' on the impropriety of warrantless searches, so too is there ample guidance on the impropriety of searches that exceed a warrant's scope. *See* 🚩 *Horton v. California,* 496 U.S. 128, 140, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). The remedy fashioned in 🚩 *Bivens* allows those injured by "officers who violated the prohibition against unreasonable search[es] and seizures" to seek damages, 🚩 *Abbasi,* 137 S. Ct. at 1854, and that is precisely what Powell seeks to do here. In sum, Powell's false arrest claim is squarely within the context faced in 🚩 *Bivens* and as such does not present a "new context."[4]

*2. Malicious prosecution*

**\*7** Powell's malicious prosecution claim, on the other hand, does not fit into the 🚩 *Bivens* mold. Neither 🚩 *Bivens* nor 🚩 *Davis* nor 🚩 *Carlson* involved a malicious prosecution claim. In light of this difference, courts in the Second Circuit and in other circuits have held that malicious prosecution claims present a new 🚩 *Bivens* context. *See* 🚩 *Butler v. Hesch,* No. 116 Civ. 1540, 2020 WL 1332476, at \*11-12 (N.D.N.Y. Mar. 23, 2020) 🚩 *id.* at \*12 (collecting cases from the Third, Fifth, Eighth, and Tenth Circuits finding that claims of malicious prosecution would require an extension of 🚩 *Bivens*).

I agree with these decisions. Powell's malicious prosecution claim differs in focus from the claims pursued in 🚩 *Bivens.* Rather than a claim of false arrest, Powell's malicious prosecution claim rests on the allegation that Santos, along with others, "initiated and continued a prosecution against him without probable cause and that they misled prosecutors and the court by omitting material and exculpatory information when bringing charges against him." *Butler,* 2020 WL 1332476, at \*12; Compl. at ¶ 125. Neither 🚩 *Bivens,* nor 🚩 *Davis,* nor 🚩 *Carlson* addressed conduct of this kind. *Butler,* 2020 WL 1332476, at \*12; *see also* 🚩 *Farah v. Weyker,* 926 F.3d 492, 499 (8th Cir. 2019) ("[I]nformation-gathering and case-building activities are a different part of police work than the apprehension, detention, and physical searches at issue in 🚩 *Bivens.*").[5]

*3. Due process deprivation*

**\*8** Powell's due process claim, mistakenly brought against Santos (a federal officer) under the Fourteenth rather than the Fifth Amendment,[6] likewise arises in a different context from previously recognized 🚩 *Bivens* actions. Powell's due process claim is based on the same conduct as his malicious prosecution claim—the fabrication and withholding of evidence to pervert a criminal prosecution—and therefore also presents a new 🚩 *Bivens* context. *Compare* Compl. at ¶¶ 143-48 *with* Compl. at ¶¶ 149-55.

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 51 of 58

Powell v. United States, Not Reported in Fed. Supp. (2020)

Powell attempts in his briefing to demonstrate that the Second Circuit recognizes a 🚩*Bivens* due process claim for fabrication of evidence. But the cases upon which Powell relies simply do not say what Powell implies they say. Powell cites primarily to 🚩*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000) and 🚩*Ganek v. Leibowitz*, 874 F.3d 73 (2d Cir. 2017). Pl. Mem. at 10, 16. However, 🚩*Ganek* merely "assume[d], without deciding," that the petitioner "could successfully clear possible threshold obstacles to his pursuit of such a due process claim," and identified as one potential hurdle, "the availability of a 🚩*Bivens* remedy for such a due process claim" under 🚩*Abbasi*. 🚩*Ganek*, 874 F.3d at 90 and n.11. 🚩*Ganek* even took notice of 🚩*Zahrey*, describing that as a case that, many years before 🚩*Abbasi*, "recogniz[ed] without discussion, [a] 🚩*Bivens* claim for fabrication of evidence." 🚩*Id.* at 90 n.11.[7]  In short, Powell's due process claim cannot be slotted into a previously approved 🚩*Bivens* context.

### 4. Failure to intercede

Powell alleges that Santos failed to intervene to prevent his malicious prosecution and false arrest. *See* Compl. at ¶ 158.

**\*9**  There is scant post-🚩*Abbasi* authority in this Circuit considering whether a failure to intervene claim presents a new 🚩*Bivens* context at step one of the 🚩*Abbasi* analysis. However, I need not traverse this uncharted 🚩*Bivens* territory in this case. Even if I were to find that Powell's failure to intervene claim fit into an established 🚩*Bivens* mold, I would still dismiss. The " 'failure to intervene theory is inapplicable' " if the officer at issue is a " 'direct participant in the allegedly unlawful conduct.' " *Ulerio v. City of New York*, No. 18 Civ. 2155, 2018 WL 7082155, at \*7-8 (S.D.N.Y. Dec. 20, 2018) (quoting *Sanabria v. Detective Shawn Tezlof*, No. 11 Civ. 6578, 2016 WL 4371750, at \*5 (S.D.N.Y. Aug. 12, 2016)). The Complaint here principally describes Santos as participating directly in both his false arrest and malicious prosecution, adding far less robust allegations regarding her purported failure to intervene. *See* Compl. at ¶ 55 (alleging that Santos knowingly exceeded the scope of the warrant and searched the third floor of the Building), ¶ 75 (alleging that

Santos swore to an affidavit that falsely represented that the incriminating evidence taken from the Building was found within the warrant's cope); ¶¶ 156-60 (alleging generally that Santos "had opportunities to intercede on behalf of Calvin Powell"). This flavor of "conclusory allegation ... does not plausibly allege that [the] officer was not directly involved in causing the constitutional harm," *Corso v. City of New York*, No. 17 Civ. 6096, 2018 WL 4538899, at \*12-13 (S.D.N.Y. Sept. 20, 2018), and given that the Complaint plainly describes Santos as a primary, rather than secondary, wrongdoer, I see no need to allow this tag-along failure to intercede claim to muddle this case. Powell's failure to intercede claim (Count VII) as to Santos is dismissed.

### 5. Civil rights conspiracy

Powell alleges that Santos and others conspired to deprive him of his right to be free from false arrest and malicious prosecution, and his right to due process of law. *See* Compl. at ¶¶ 162-63. As with Powell's due process and failure to intercede claims, *see supra*, I need not reach the question of whether the civil rights conspiracy count is actionable under 🚩*Bivens*, as this claim is doomed by other pleading deficiencies.

To state a claim for civil rights conspiracy, Powell must allege "(1) an agreement between two or more state actors ...; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." 🚩*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).[8]  Given "the relative ease with which conspiracy allegations may be brought, and the substantial disruption of governmental function that they can cause," a claimant is required to furnish " 'more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive [the claimant] of his constitutional rights.' " 🚩*Nwanze v. Phillip Morris, Inc.*, 100 F.Supp.2d 215, 219 (S.D.N.Y. 2000), *aff'd sub nom.*, *Nwanze v. Morris*, 6 F. App'x 98 (2d Cir. 2001) (quoting 🚩*Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990) and collecting cases).

Applying the requisite liberality owed to Powell generally at this stage and to conspiracy claims specifically, I find that the Complaint's conspiracy count rests on a foundation too anemic to survive Santos's motion to dismiss. The Complaint surely alleges that Santos and others took actions that violated

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 52 of 58

**Powell v. United States, Not Reported in Fed. Supp. (2020)**

his constitutional rights, such as disregarding the limitations of a warrant and misrepresenting evidence to a grand jury. But only once in the Complaint's factual recitation does Powell actually charge Santos with "agreement," an indispensable element:

> On information and belief, the law enforcement officers, including Detective Fogarty, Detective Santos, and Police Officer Doherty, agreed to falsely claim that they had recovered the drugs and other criminal evidence in Mr. Powell's possession within the bounds of their warrant ...

Compl. at ¶ 65. Powell must do more than append, "[o]n ... belief," the label of "agreement" to otherwise independent charges of constitutional misconduct, in order to state a conspiracy claim. Powell's civil rights conspiracy claim (Count III) is dismissed as to all Defendants.

### 6. Extension of Bivens

Powell's claim is that Santos and others willfully violated the Fourth and Fifth Amendments by perverting the integrity of the judicial process through the introduction of false evidence against him. This Circuit has long recognized that, "To hold that police officers ... are ... free to fabricate [evidence] at will, would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice." *Ricciuti v. N.Y.C. Trans. Auth,* 124 F.3d 123, 130 (2d Cir. 1997). The question here is whether, under the modern incarnation of the *Bivens* doctrine, "special factors" counsel hesitation against extending *Bivens* and require that this Court acquiesce to a "mockery ... of due process of the law and fundamental justice." For the reasons that follow, no special factors counsel against allowing Powell's claims to proceed.

**\*10** Santos contends that Powell "has a potential, alternative method of relief through the FTCA." Def. Mem. at 10. I am unpersuaded. True, the FTCA provides a cause of action for recovery against the United States for "malicious prosecution." *See* 28 U.S.C. §§ 2674, 2680(h). But the

FTCA facilitates only liability in "tort" against the United States itself, 28 U.S.C. § 2674, whereas the *Bivens* remedy "vindicates violations of constitutional rights by federal employees," *Bueno Diaz,* 2020 WL 1082482, at \*6, 442 F.Supp.3d 701. The FTCA aims to protect citizens from a different form of harm and does so without holding responsible individual officers—as the Supreme Court has explained, this divergence renders *Bivens* and the FTCA "parallel," nonfungible causes of action. *See Carlson,* 446 U.S. at 20, 100 S.Ct. 1468 (ruling it is "crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action"). And as for Powell's due process claim, Santos does not dispute that the FTCA's limitation to *intentional torts* disqualifies that statute as a colorable alternative remedy for Fifth Amendment *constitutional* violations.

In *Carlson,* the Supreme Court identified several meaningful differences between claims brought under the FTCA versus under *Bivens.* To name just a few: First, "[b]ecause the *Bivens* remedy is recoverable against individuals, it is a more effective deterrent than the FTCA remedy against the United States." *Id.* at 21, 100 S.Ct. 1468. Second, although the Court has not addressed the question directly, it has "indicate[d] that punitive damages may be awarded in a *Bivens* suit." *Id.* at 21-22, 91 S.Ct. 1999. The FTCA prohibits punitive damages. *See* 28 U.S.C. 2674. Third, *Bivens* provides for the constitutional guarantee of trials by jury, whereas the FTCA does not make jury trials available. *Carlson,* 446 U.S. at 22, 100 S.Ct. 1468 (citing 28 U.S.C. § 2402). In all, the Court determined, the "FTCA is not a sufficient protector of the citizens' constitutional rights." *Id.* at 23, 100 S.Ct. 1468. And in the ensuing years, the Court has, on more than one occasion, made similar statements regarding the interplay between the FTCA and *Bivens.* *See Bush v. Lucas,* 462 U.S. 367, 378, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (Congress never "expressly declared the FTCA remedy to be a substitute for a *Bivens* action"); *Wilkie v. Robbins,* 551 U.S. 537, 553, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007) (citing *Carlson*'s reasoning approvingly).

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 53 of 58

Powell v. United States, Not Reported in Fed. Supp. (2020)

I recognize that several courts in this District have found the FTCA to qualify as an alternative remedy to Bivens. [9] Many of these decisions have taken the language in Abbasi as to Carlson perhaps being decided differently if it were addressed today to mean that, whereas the "FTCA was once considered parallel and complementary to a Bivens remedy," that is "no longer the case." Sosa, 2020 WL 1940550, at *4. However, like Judge Torres in her recent Bueno Diaz decision, I decline to adopt this reasoning. The Supreme Court has not been bashful in signaling its skepticism of the Bivens remedy—if the Court intended to overrule Carlson, I am quite sure it would simply do so. See, e.g., Doe v. United States, 381 F.Supp.3d 573, 615 (M.D.N.C. 2019) ("If the Supreme Court wanted to overrule its earlier precedent in Abbasi, it would have done so explicitly."); Engel v. Buchan, 710 F.3d 698, 708 (7th Cir. 2013) (observing that "the ground has shifted under Bivens, shaking its doctrinal foundations," but reasoning that, "shaky or no, Bivens remains the law, and we are not free to ignore it"). The FTCA standing on its own does not give the Court reason to hesitate in extending Bivens.

From there, Santos argues that "allowing a damages remedy in malicious prosecution Bivens action," would interfere with "investigative and prosecutorial functions." [10] Def. Mem. at 11 (quotation marks omitted). Again, I am not convinced. Unlike Abbasi (which concerned matters of national security and challenges to high-level Executive branch policy, see Abbasi, 137 S. Ct. at 1860-63), or Hernandez (which concerned issues of international relations, national security, and immigration policy; took place against the backdrop of federal statutes that limited recovery for any injuries occurring abroad; and had garnered specific attention from Congress, see Hernandez, 140 S. Ct. at 744-49), the malicious prosecution claim here challenges the same species of run-of-the-mill, low-level law enforcement behavior at issue in Bivens itself.

 *11 Tellingly, the potential negative "interference" identified by Santos—that allowing Powell's malicious prosecution Bivens claim here would interfere with

prosecutorial discretion and further disincentivize law enforcement from sharing information with prosecutors, Def. Mem. at 11—is inapplicable to the present case. Powell claims that Santos lied in sworn statements in order to fabricate evidence to support his meritless prosecution. Prosecutors surely have discretion as to a wide range of actions, but nowhere in this prerogative is the prosecutorial right to bring a case based on outright lies. And if Santos is right that a Bivens claim here would "disincentivize law enforcement" from fabricating evidence, Def. Mem. at 11, then that is all the more reason to permit Powell's claim to proceed. Cf., e.g., Lanuza v. Love, 899 F.3d 1019, 1033 (9th Cir. 2018) ("[A] Bivens action here will produce widespread litigation only if ICE attorneys routinely submit false evidence, which no party argues is the case. And if this problem is indeed widespread, it demonstrates a dire need for deterrence, validating Bivens's purpose."); Engel, 710 F.3d at 708 (applying Bivens to Brady claims and noting, "we cannot see how prosecutors and law-enforcement officers could be 'overdeterred' in the disclosure of exculpatory material to criminal defendants").

Because the Supreme Court has made clear that separation of powers principles are "central" to the Bivens analysis, see Hernandez, 140 S. Ct. at 743, I close this discussion with a response to the question of "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits" of allowing a Bivens action to proceed, Abbasi, 137 S. Ct. at 1858. The right Powell seeks to vindicate—whether framed as a malicious prosecution under the Fourth Amendment or a due process violation under the Fifth—is the right of citizens to be free from prosecution on the basis of false evidence adduced by federal officers.

It is no exaggeration to say that this right—which stems from the legal system's unflagging obligation to pursue truth and justice—lies near the core of what the Judicial Branch is entrusted with securing. See Sherman v. United States, 356 U.S. 369, 380, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) (Frankfurter, J., concurring) ("The federal courts have an obligation to set their face against enforcement of the law by lawless means or means that violate rationally vindicated standards of justice."). The Ninth Circuit, in extending Bivens to an alien's claim that a federal immigration officer

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 54 of 58

**Powell v. United States, Not Reported in Fed. Supp. (2020)**

falsified evidence to support removal proceedings against the alien, explained why lawsuits involving the falsification of evidence by government officers are well-suited to Article III adjudication:

> Judges are particularly well-equipped to weigh the costs of constitutional violations that threaten the credibility of our judicial system. Indeed, there are few persons better equipped to weigh the cost of compromised adjudicative proceedings than those who are entrusted with protecting their integrity. And, more often than not, the Judicial Branch, not Congress or the Executive, is responsible for remedying circumstances where a court's integrity is compromised by the submission of false evidence. Thus, it falls within the natural ambit of the judiciary's authority to decide whether to provide a remedy for the submission of false evidence ...

*Lanuza*, 899 F.3d at 1032-33.

I could not agree more. The right to be free from false testimony and prosecution is essential to the integrity of the judicial process. And given that malicious prosecution and due process claims are familiar in this court and Circuit, *see, e.g., Lanning v. City of Glens Falls*, 908 F.3d 19, 25-28 (2d Cir. 2018) (discussing at length the federal standard for malicious prosecution actions); *Ganek*, 874 F.3d at 90 (reviewing the elements of a claim for violation of due process); *Garnett v. Undercover Officer COO39*, 838 F.3d 265, 274 (2d Cir. 2016) ("No arrest ... gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee.") (alterations and quotation marks omitted), there are no discernible "difficult[ies] in defining a workable cause of action," *Wilkie*, 551 U.S. at 539, 127 S.Ct. 2588.

**\*12** In sum, in the narrow circumstances alleged here— a federal law enforcement officer fabricating evidence in furtherance of a malicious prosecution, in direct violation of

the Fourth Amendment—I conclude that no special factors counsel hesitation toward extension of *Bivens* and deny the motion to dismiss Powell's claims on that basis. Indeed, if I were to permit federal officers to fabricate evidence without repercussions, it would have consequences beyond Powell's case. It would cause society to lose faith that the government plays fair.

**B. Personal Involvement**

Santos next argues that Powell fails to plead that she was personally involved with the misconduct alleged. *See* Def. Mem. at 12-14; Def. Reply Mem. at 8-9. I disagree. The Complaint alleges that Santos, despite knowing that the warrant only covered the first two floors of the Building, proceeded to search the third floor, *see* Compl. at ¶¶ 55-62; that Santos, despite knowing that the contraband recovered on the third floor belonged to a tenant other than Powell, swore to an affidavit that falsely identified the evidence as belonging to Powell, *see id.* at ¶¶ 63-76; and that Santos was among the officers who orally assured the prosecutors during Powell's motion to suppress proceedings that the evidence was lawfully obtained, *see id.* at ¶¶ 103-04. Santos complains that these allegations charge Santos along with other officers, amounting to an improper "group pleading." Def. Mem. at 13. But the fact that Santos is alleged to have violated Powell's constitutional rights in the company of other officers does not somehow erase the fact that Santos is alleged to have violated Powell's rights—when it comes to unconstitutional searches, seizures, and misrepresentations of evidence, there is no such thing as safety in numbers. [11]

**C. Qualified Immunity**

**\*13** Finally, Santos contends that Powell's claims are barred by qualified immunity. *See* Def. Mem. at 19-20. The burden to establish this defense falls on Santos, *see, e.g., Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013), and she has failed to meet it. "Qualified immunity" "protects public officials performing discretionary functions from personal liability in a civil suit for damages insofar as the conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quotation marks omitted).

Powell contends that Santos—albeit with some help— arrested him despite knowing that she had exceeded the scope of the search warrant, and made false representations

Powell v. United States, Not Reported in Fed. Supp. (2020)

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 55 of 58

in furtherance of Powell's ultimately-dismissed prosecution. The rights to be free from warrantless searches and fabricated evidence are, unsurprisingly, "clearly established." *See, e.g.,*

🚩 *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988) ("A search must be confined to the terms and limitations of the warrant authorizing it."); *Simon v. City of New York*, 893 F.3d 83, 88 (2d Cir. 2018) ("[I]t is self-evident that a seizure conducted pursuant to an arrest warrant must conform to the terms of that warrant.") (quotation marks omitted);

🚩 *United States v. Nejad*, 436 F.Supp.3d 707, 733 (S.D.N.Y. 2020) (the "[s]eizure of items outside the scope of a search warrant is unconstitutional ...") (quotation marks omitted);

🚩 *Napue v. People of State of Ill.*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) ("The principle that a State may not knowingly use false evidence ... to obtain a tainted conviction" is "implicit in any concept of ordered liberty"); 🚩 *Zahrey*, 221 F.3d at 355 ("It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer."); 🚩 *Morse v. Fusto*, 804 F.3d 538, 547 (2d Cir. 2015) ("[E]veryone possesses the ... right not to be deprived of liberty as a result of the fabrication of evidence ...") (quotation marks omitted). The Second Circuit has held that, absent "extraordinary circumstances, [i]f the law was clearly established, the immunity defense ordinarily should fail."

🚩 *Vincent*, 718 F.3d at 166 (quotation marks omitted). Santos has failed to identify any "extraordinary circumstances," and, thus, she has failed to demonstrate entitlement to the defense of qualified immunity. [12] No reasonable officer would have thought it lawful to wholly disregard and violate the terms of a warrant, much less thought it lawful to shroud this violation for purposes of sustaining a criminal prosecution.

### Conclusion

**\*14** For the foregoing reasons, Santos's motion to dismiss is granted in part and denied in part. With respect to Powell's false arrest (Count IV), malicious prosecution (Count V), and due process (Count VI) claims, the motion is denied. In all other respects the motion is granted. The parties shall appear for a status conference at 10:00 a.m. on September 11, 2020, to chart a course for the remainder of this litigation. The Clerk is hereby directed to close the open motion (ECF No. 44).

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2020 WL 5126392

### Footnotes

1    News sources indicate that one of the officers involved in the search, Defendant Sean Fogarty, later pled guilty to a perjury charge in connection with his statement to a grand jury that the drugs and related evidence were found on the second floor of the apartment. *See* Jonathan Bandler, Yonkers Detective Sean Fogarty Pleads Guilty to Perjury for Lying in Drug Case, Rockland/Westchester Journal News, https://www.lohud.com/story/news/crime/2019/12/27/yonkers-detective-sean-fogarty-pleads-guilty-perjury-case/2753367001/ (last visited July 6, 2020). According to these sources, Fogarty was forced into early retirement as part of his plea deal. *See* 🚩 *id.* Although Powell "does not expect Detective Santos will dispute that ... Fogarty pled guilty to misdemeanor perjury," Pl. Opp. Mem., ECF No. 49, at 23 n.1, I take judicial notice only of the article's existence and not the truth of its description of the facts, *see, e.g.,* 🚩 *In Re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, 757 F.Supp.2d 260, 302 (S.D.N.Y. 2010), as it is immaterial for present purposes whether Fogarty indeed took such a plea.

2    The facts are taken from the FAC and are assumed true for purposes of this motion. *See, e.g., Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

**Powell v. United States, Not Reported in Fed. Supp. (2020)**

Case 3:23-cv-01597-AMN-ML    Document 9    Filed 01/17/24    Page 56 of 58

3    The Complaint does not specify why Powell was on probation.

4    The two cases cited by Santos for a contrary result are distinguishable. *See* Def. Mem. at 7. In *Oliveras v. United States Dep't of Homeland Sec. Investig. Spec.* 🚩*Response Team Officer Robert Basile*, 440 F.Supp.3d 365 (S.D.N.Y. 2020), the petitioner claimed to be the "unwitting victim of collateral damage stemming from Defendants' execution of an arrest warrant" after the officers detonated explosives in the course of executing a valid warrant in a separate area of petitioner's building. 🚩*Id.* at 371. There, the court noted that petitioner's claims were factually distinct from 🚩*Bivens*, implicated an uncertain area of law as to the propriety of using explosives "in an outdoor area, in the course of executing an arrest warrant, and inadvertently injur[ing] a non-target of that warrant," and involved the right to be free from excessive force rather than the privacy right to be free from unconstitutional searches. *See* 🚩*id.* at 372-73. And 🚩*Martinez v. D'Agata*, No. 16 Civ. 44, 2019 WL 6895436 (S.D.N.Y. Dec. 18, 2019), addressed petitioner's claim for "failure to intervene when excessive force was used to effectuate an arrest," not the right to be free from warrantless searches, and in any event involved an arrest effected pursuant to a valid warrant wherein the arrest was not challenged for infidelity to the warrant but for its alleged use of excessive force. 2019 WL 6895436, at *5-6. Neither 🚩*Oliveras* nor 🚩*Martinez* involved a false arrest claim leveled on precisely the same grounds as 🚩*Bivens*: an arrest made after officers unconstitutionally searched the claimant's home.

5    Powell argues that *Butler* and 🚩*Farah*, among other similar authority, should be ignored because they "both fail to recognize that Second Circuit precedent recognizes 🚩*Bivens* actions for malicious prosecution." Pl. Opp. Mem. at 9. But the cases cited by Powell do not substantiate this proposition. Take *Barone v. United States*, 722 F. App'x 57 (2d Cir. 2018) first. *Barone*, a non-precedential summary order, affirmed the *dismissal* of a malicious prosecution claim brought under 🚩*Bivens*, on the grounds that probable cause existed for the prosecution, and without addressing whether malicious prosecution is viable under 🚩*Bivens*. What's more, the district court opinion reviewed by *Barone* was decided in February 2017, several months before 🚩*Abbasi*, and several years before 🚩*Hernandez*. It is therefore no surprise that the district court assumed the existence of this species of 🚩*Bivens* action without any discussion and also without applying 🚩*Abbasi*'s two-step framework. *See Barone v. United States*, No. 12 Civ. 4103, 2017 WL 478259, at *9 (S.D.N.Y. Feb. 6, 2017). The *Barone* summary order has been cited only a single time, in a situation having nothing to do with 🚩*Bivens. See* 🚩*Williams v. City of New York*, 409 F.Supp.3d 137, 145 (E.D.N.Y. 2019). The other case cited by Powell, 🚩*Green v. Montgomery*, 219 F.3d 52 (2d Cir. 2000), no better serves his purposes. 🚩*Green* was decided around twenty years before 🚩*Abbasi* and 🚩*Hernandez*, and involved claims brought under 🚩42 U.S.C. § 1983 and not 🚩*Bivens*. In its entirety, the 🚩*Green* opinion makes a single fleeting reference to 🚩*Bivens* in a footnote, in which it is observed that "the New York presumption of probable cause, if unrebutted, is sufficient to block a 🚩*Bivens* claim for malicious prosecution." 🚩*Id.* at 60 n.2. No challenge to the availability of a 🚩*Bivens* malicious prosecution action was discussed and, given that the opinion addressed claims under 🚩*Section 1983*, any allusion to 🚩*Bivens* was at most dictum. It is "beyond debate that '[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.' " *Ret. Plans Comm. of IBM v. Jander*, ––– U.S. ––––, 140 S. Ct. 592, 597, 205 L.Ed.2d 432 (2020) (Gorsuch, *J.*, concurring)

**Powell v. United States, Not Reported in Fed. Supp. (2020)**

Case 3:23-cv-01597-AMN-ML   Document 9   Filed 01/17/24   Page 57 of 58

(quoting 🚩 *Webster v. Fall*, 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925)). This maxim is all the more worthy of attention here, given the Supreme Court's later decisions in 🚩 *Abbasi* and 🚩 *Hernandez*.

As a final note, Plaintiff contends that *Butler* should not be read as contrary to a Sixth Circuit opinion, which found that a malicious prosecution claim may proceed under 🚩 *Bivens*. *See* 🚩 *Jacobs v. Alam*, 915 F.3d 1028, 1038-39 (6th Cir. 2019). This is wrong for a few reasons. First, *Butler* expressly declined to follow 🚩 *Jacobs*, concluding that the long list of contrary authority listed by *Butler* and referenced *supra*, is "persuasive." *Butler*, 2020 WL 1332476, at *12. Second, while *Butler* distinguishes 🚩 *Jacobs* as involving the "warrantless entry by federal agents into the plaintiff's home" and therefore being "aligned with the factual scenario presented by 🚩 *Bivens*," *id.*, these referenced facts have to do with searches and seizures, and not with the actual mechanics of a malicious prosecution claim (indeed, that is why *Butler* references these differences in rejecting a 🚩 *Bivens* action for malicious prosecution. Finally, 🚩 *Jacobs* itself appears to over-read 🚩 *Abbasi*. 🚩 *Jacobs* relies heavily on the language from 🚩 *Abbasi* referring to the "recurrent sphere of law enforcement" as reason to uphold a 🚩 *Bivens* remedy in a range of contexts, including malicious prosecution. *See* 🚩 *Jacobs*, 915 F.3d at 1037-39. But the phrase in *Abbasi*—"*this* common and recurrent sphere of law enforcement"—was not referring to "law enforcement" generally, but to one incarnation of enforcement activity, namely "the search-and-seizure context" in which 🚩 *Bivens* arose. 🚩 *Abbasi*, 137 S. Ct. at 1856-57; *see* 🚩 *Abdoulaye v. Cimaglia*, No. 15 Civ. 4921, 2018 WL 1890488, at *6 (S.D.N.Y. Mar. 30, 2018) ("[T]he common presence of law enforcement in a claim for constitutional violations against federal agents does not end the inquiry with which the Court is tasked.").

6   Because Santos she was operating in her capacity as a member of a federal task force, and because Powell alleges that she was acting under "color of Federal law," Compl. at ¶ 18, she is not bound by Fourteenth Amendment's due process restrictions. *See* Def. Mem. at 8; 🚩 *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009) ("The Amendment applies only to *state* action.") (emphasis added); *accord Maloney v. Soc. Sec. Admin*, No. 02 Civ. 1725, 2006 WL 1720399, at *8 (E.D.N.Y. June 19, 2006) ("[T]he Fourteenth Amendment does not apply to the federal government, but only to acts by a State."), *aff'd*, 517 F.3d 70 (2d Cir. 2008). From here on out, I treat this claim as though it were properly brought under the Fifth Amendment.

7   Unable to find solid ground in this Circuit, Powell again turns elsewhere. Pointing to the Sixth Circuit's decision in 🚩 *Jacobs*, Powell argues that due process claims for "fabrication of evidence" are "garden-variety 🚩 *Bivens* claims." 🚩 *Jacobs*, 915 F.3d at 1038. 🚩 *Jacobs* is neither controlling nor persuasive. 🚩 *Jacobs* batches together the "fabrication of evidence" claim with other counts of "excessive force, false arrest, malicious prosecution, ... and civil conspiracy," without any substantive analysis as to why a "fabrication of evidence" claim in particular satisfies the first step of the 🚩 *Abbasi* test. Worse, the principal reasoning explaining the Sixth Circuit's determination that this fabrication claim does not break new 🚩 *Bivens* ground, is the Court's statement that it had *previously* recognized a 🚩 *Bivens* action for this type of claim *prior to Abbasi*—needless to say, the cases relied upon in 🚩 *Jacobs* did not apply the framework later established by the Supreme Court to fabrication of evidence claims under 🚩 *Bivens*. *See* 🚩 *Jacobs*, 915 F.3d at 1038-39 (citing, *inter alia*, 🚩 *Webb v. United States*, 789 F.3d 647, 667 (6th Cir. 2015)).

**Powell v. United States, Not Reported in Fed. Supp. (2020)**

Case 3:23-cv-01597-AMN-ML    Document 9    Filed 01/17/24    Page 58 of 58

8    These elements are taken from a claim brought under 42 U.S.C. § 1983 for civil rights conspiracy—I assume, as do the parties, without deciding, that these elements are the same under *Bivens*.

9    *See Abdoulaye*, 2018 WL 1890488, at *7; *Sosa v. Bustos*, No. 17 Civ. 417, 2020 WL 1940550, at *4 (S.D.N.Y. Apr. 22, 2020); *Rivera v. Samilo*, 370 F.Supp.3d 362, 369-70 (E.D.N.Y. 2019); *Martinez*, 2019 WL 6895436, at *7; *Morgan v. Shivers*, No. 14 Civ. 7921, 2018 WL 618451, at *5-6 (S.D.N.Y. Jan. 29, 2018); *Style v. Mackey*, No. 17 Civ. 1691, 2020 WL 3055319, at *4 (E.D.N.Y. June 8, 2020); *Oliveras*, 440 F.Supp.3d at 373.

10   Santos does not raise this same argument with respect to Powell's due process claim.

11   The cases cited by Santos in her brief are inapposite, both because they involved far more egregious complaints and because the decisions recognized that specificity is required only to the degree that it puts officers on notice of their allegedly improper acts. Here, if Santos wants to know what Powell complains of, she need only review the Complaint, which charges her with knowingly exceeding the limitations of a warrant, and knowingly swearing to an affidavit that incorrectly attributed the recovered drugs and drug paraphernalia to Powell. *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (affirming dismissal where *pro se* plaintiff, after having the opportunity to amend the complaint, "failed to identify any factual basis for the legal claims made," and failed to "identify which defendants were alleged to be responsible for which alleged violations," while also noting that a complaint need not be a "model of clarity or exhaustively present the facts alleged" so long as it gives defendants "fair notice" of claims against them) (quotation marks omitted); *Sanusi v. Dep't of Homeland Sec.*, No. 06 Civ. 2929, 2014 WL 1310344, at *6 (E.D.N.Y. Mar. 31 2014) (dismissing where plaintiff "only broadly contend[ed] that defendants were responsible for the length and conditions of his confinement" without otherwise alleging their personal involvement).

And for the same reasons discussed in this subsection, Santos's argument that Powell has failed to properly plead to his malicious prosecution claim is meritless. The Complaint specifies that Santos knowingly exceeded the scope of the warrant, falsely represented that the evidence was recovered from premises authorized for search by the warrant, and did not correct Doherty's materially inaccurate arrest report.

12   In arguing otherwise, Santos contorts Powell's claims. For instance, Santos describes the Complaint as alleging that she "omitted to include an additional statement correcting a purportedly false statement as to which apartment was searched," and intimates that Powell's claim is that Santos was not "entitled to rely on the search warrant signed by the judge," Def. Mem. at 20. But Powell in fact alleges that Santos falsely maintained that the drugs found in the Building were in Powell's possession (*i.e.*, found on the first two floors of the apartment and not on the third floor, which—aside from being outside the warrant—bore indicia of belonging to another person), disregarded the scope of the warrant, and was among the officers who assured prosecutors that the contraband was found during a search that abided by the terms of the warrant during the course of proceedings on Powell's state court motion to suppress.

---

End of Document                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.